HITE *v.* EVART PRODUCTS COMPANY

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION ACT—CONSTRUCTION.

The Workmen's Compensation Act, as other statutes, should be construed reasonably in the light of the purpose which it seeks to accomplish; a court must first determine the act's purpose and then apply the test of reasonableness.

2. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION ACT—PURPOSE.

The theory of the Workmen's Compensation Act is that the consuming public, not charity, public or private, must foot the bill for work-incurred injuries.

3. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION ACT—"COMPENSATION"—CONSTRUCTION.

"Compensation", as found in the Workmen's Compensation Act, must be understood in its broader sense; in order to carry out the legislative intent, the Act must be construed in light of its humanitarian objectives and beneficent purposes.

4. WORKMEN'S COMPENSATION—"WEEKLY WAGES"—ECONOMIC GAIN—CONSTRUCTION.

Weekly "wages" or "earnings" as used in the Workmen's Compensation Act as the basis upon which the amount of compensation is computed, includes all items of compensation or advantage agreed upon in the contract for hire which are measurable in money, whether in the form of cash or as an economic gain to the employee (MCLA § 412.11).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 58 Am Jur, Workmen's Compensation §§ 26–31.
[2] 58 Am Jur, Workmen's Compensation § 2.
[4] 58 Am Jur, Workmen's Compensation § 308.
[5–7, 15] 58 Am Jur, Workmen's Compensation §§ 308–310.
[8] 58 Am Jur, Workmen's Compensation §§ 327, 328.
[9] 43 Am Jur, Public Officers § 369.
[10–14] 58 Am Jur, Workmen's Compensation § 328.

5. WORKMEN'S COMPENSATION—WEEKLY WAGE—EMPLOYER'S PENSION PAYMENT.

A workmen's compensation claimant's weekly wage includes an amount of money put aside weekly by her employer into a pension fund for the benefit of the employee even though the employee would obtain a vested interest in the fund only after ten years of employment, the employee worked for the employer for only two years, and the employee did not contribute to the fund, because credits to the fund reflect the employee's services and worth and, therefore, increased wage capacity; the employee's injury requires her to make other provisions for retirement (MCLA § 412.11).

6. WORKMEN'S COMPENSATION—WEEKLY WAGE—EMPLOYER CONTRIBUTION TO INSURANCE PREMIUMS.

A workmen's compensation claimant's weekly wage includes amounts contributed weekly by her employer towards the premium on insurance covering the employee; the fact that the employee chose not to pay her share of the premium after her injury occurred does not mean that she should not be given credit for this form of increased wages (MCLA § 412.11).

7. WORKMEN'S COMPENSATION—WEEKLY WAGE—VACATION AND HOLIDAY PAY—WEEKLY CREDIT.

A workmen's compensation claimant's weekly wage includes amounts set aside weekly for vacation and holiday pay or that portion of holiday or vacation pay computed to be earned in a week, because vacation and holiday pay are something the employee earned during each week of work to be enjoyed in the future and, because of her injury, the employee lost an advantage which was to be recompensed and measured in money (MCLA § 412.11).

8. WORKMEN'S COMPENSATION—MEDICAL SERVICES—TRANSPORTATION EXPENSES.

The Workmen's Compensation Act requires that the employer furnish medical services for the injured employee; the medical services obligation requires that the employer reimburse the employee for reasonable transportation expenses incurred by the employee in securing medical services (MCLA § 412.4).

9. WORK AND LABOR—STATE EMPLOYEES—PRIVATE TRANSPORTATION—STANDARD TRAVEL REGULATIONS—JUDICIAL NOTICE.

The Michigan Standard Travel Regulations have as their purpose the providing of reimbursement, not gain or loss, to state

employees who are required to provide their own transportation (MCLA §§ 18.4[h], 24.80).

10. WORKMEN'S COMPENSATION—MEDICAL SERVICES—PRIVATE TRANSPORTATION EXPENSES—STANDARD TRAVEL REGULATIONS.

The rate of reimbursement for the travel expenses incurred by a workmen's compensation claimant when using private transportation to receive medical treatment for the covered injury is the rate set forth in the Standard Travel Regulations, because the Standard Travel Regulations are designed to provide reimbursement, not gain or loss (MCLA §§ 412.4, 24.80, 18.4[h]).

11. WORKMEN'S COMPENSATION—MEDICAL SERVICES—TRANSPORTATION EXPENSES—TYPE OF TRANSPORTATION.

The applicable rate of reimbursement for private transportation expense will not be awarded a workmen's compensation claimant who incurs such expense in securing medical services for the treatment of a covered injury where there is nothing in the record to indicate that available public transportation at a lower rate would have been unreasonable; reimbursement will be awarded only for the cost of the public transportation (MCLA § 412.4).

12. WORKMEN'S COMPENSATION—MEDICAL SERVICES—PUBLIC TRANSPORTATION—PRIVATE TRANSPORTATION.

A workmen's compensation claimant who was entitled to be reimbursed for the cost of public transportation used in securing medical treatment for the covered injury, and who was not entitled to reimbursement based on the rate for private transportation was, nevertheless, entitled to reimbursement based on the private transportation rate for the distance between the claimant's home and the public transportation terminal in her city and for the distance between the doctor's office and the public transportation terminal in the doctor's city where it was unreasonable for claimant to walk these distances (MCLA § 412.4).

13. WORKMEN'S COMPENSATION—MEDICAL SERVICES—MEAL ALLOWANCE—REASONABLENESS—FACTORS.

An allowance for meals bought by a workmen's compensation claimant who travels to receive medical treatment at a clinic or doctor's office or as a hospital outpatient is, under certain circumstances, reasonable; factors to be considered in determining the reasonableness of the meal allowance are the time of day, distance travelled, the employee's habits, and of ne-

cessity, whether a meal in fact had been consumed (MCLA § 412.4).

14. WORKMEN'S COMPENSATION—MEDICAL SERVICES—MEAL ALLOWANCE—REASONABLENESS.

A meal allowance pursuant to the employer's medical services obligation under the Workmen's Compensation Act will not be allowed where the record does not show that the claimant consumed even one meal during her travel for medical services, but does show that her appointments were at 4 p.m. and that she could have been home between 6 and 6:30 p.m. (MCLA § 412.).

DISSENT BY HOLBROOK, P. J.

15. WORKMEN'S COMPENSATION—WEEKLY WAGES—VACATION AND HOLIDAY PAY.

*A workmen's compensation claimant's weekly wage does not include holiday and vacation pay set aside by the employer on a weekly basis where the money was set aside to allow claimant to have certain holidays and vacation days off, days when the employer's plant was closed, and still be paid her regular weekly pay, and the arrangement, the vacation days and the holidays coming when the employer's plant was closed did not allow the claimant to work and be paid double for working the days off.*

Appeal from the Workmen's Compensation Appeal Board. Submitted Division 3 October 7, 1970, at Grand Rapids. (Docket No. 8358.) Decided June 21, 1971. Leave to appeal denied, 386 Mich 753.

Barbara Hite submitted her claim for workmen's compensation against Evart Products Company. Plaintiff appeals by leave granted from the decision of the Workmen's Compensation Appeal Board. Defendant cross-appeals. Decision modified.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley* (by *Edward M. Welch*), for plaintiff.

*Cholette, Perkins & Buchanan* (*Edward D. Wells,* of counsel), for defendant.

Before: Holbrook, P. J., and R. B. Burns and J. J. Kelley, Jr.,* JJ.

Kelley, J.    In August, 1960, plaintiff received an injury which arose out of and in the course of her employment by defendant, and which caused the industrial loss of the use of her left hand.  She had six children dependent on her for support.  Disputes arose over the amount of plaintiff's average weekly wage and as to whether she was entitled to mileage and meal allowances in travelling to secure necessary medical care.

After a hearing the referee refused to consider alleged fringe benefits totalling $7.91, determined plaintiff's average weekly wage to be $60, and allowed only a part of the claimed travel expenses.

On appeal the Workmen's Compensation Appeal Board modified the referee's decision by including in plaintiff's average weekly wage the value of pension and group insurance payments, but affirmed rejection of the value of vacation and holiday pay.  The appeal board also affirmed the referee's award of 8 cents per mile for travel and awarded an additional $1.25 per trip as a meal allowance.

Plaintiff was granted leave to appeal to this court. Defendant cross-appealed.  Apparently no appellate court of this State has decided the issues presented.

The Workmen's Compensation Act, as other statutes, should be construed reasonably in the light of the purpose which it seeks to accomplish.  *Benjamin* v. *Huntington Woods* (1957), 349 Mich 545, 555. Our task, therefore, is to determine the purpose of the Act and then to apply the test of reasonableness.

Upon its enactment, the compensation act was proclaimed as a means of determination of right to com-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

pensation of workmen for industrial injuries upon the basis of trade risks relating to the industry, to be charged against it as part of the cost. *Sheppard* v. *Michigan National Bank* (1957), 348 Mich 577, 579. The theory of the act is that the consuming public, not charity, public or private, must foot the bill for work-incurred injuries. *Crilly* v. *Ballou* (1958), 353 Mich 303, 308. In order to carry out the legislative intent and to construe the act properly, its humanitarian objectives and beneficent purposes[1] must be kept in mind, and "compensation" must be understood in its broader sense. *Munson* v. *Christie* (1935), 270 Mich 94, 99.

*I. In determining an employee's weekly wage for the purpose of workmen's compensation should the value of remuneration in the form of vacation pay, holiday pay, and the employer's contributions to insurance and pension plans be included?*

The applicable portion of the workmen's compensation law[2] in effect in 1960 provided:

"The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury.   *   *   *   The compensation payable, when added to his wage earning capacity after the

---

[1] *Sheppard* v. *Michigan National Bank, supra,* 582, 589.

[2] CL 1948, § 412.11. At present MCLA § 418.371 (Stat Ann 1971 Cum Supp § 17.237[371]), being § 371 of the Workmen's Compensation Act of 1969, PA 1969, No 317, provides that "average weekly wage means the weekly wage   *   *   *   inclusive of overtime, premium pay and cost of living adjustment, and exclusive of any fringe or other benefits which continue during disability   *   *   *   ".

injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.

"The term 'average weekly wage', as used in this act, is defined to be the weekly wage earned by the employee at the time of his injury but in no case less than 40 times his hourly rate of wage or earning."

Faced with the problem of construction of a similar statute, the enlightened court of another state determined that "wage" or "earnings" must be deemed to include all items of compensation or advantage agreed upon in a contract of hiring which are measurable in money, whether in the form of cash or as an economic gain to the employee. *Leslie* v. *Reynold* (1956), 179 Kan 422, 430 (295 P 2d 1076, 1083). We approve this definition.

Testimony of defendant's personnel manager established that pursuant to her employment contract, plaintiff received her weekly pay plus additional benefits of a weekly dollar value as follows:

|                   |        |
|-------------------|--------|
| Pension payment   | $2.60  |
| Group insurance   | 2.63   |
| Vacation pay      | 1.13   |
| Holiday pay       | 1.55   |
| Total             | $7.91  |

All these have ceased because of the injury.

(a) *Pension Payment*

For each week of plaintiff's employment her employer paid $2.60 into a pension fund for her benefit. After ten years of employment plaintiff would have obtained a vested interest in the fund.

Defendant argues that this item should not be considered because plaintiff, who began work less than two years before the injury, had contributed nothing to the fund and had no interest in it at the time of her injury.

The earning capacity of an employee who completes the tenth year of employment and thus becomes eligible for the pension, does not thereby suddenly increase by $2.60 or by the amount of a periodic pension payment. On the contrary, during the ten years of work the $2.60 per week reflects the employee's service and worth, and therefore, increased wage capacity, accruing credits that convert to subsequent pension benefits.

We may only speculate whether plaintiff would have worked a full ten years for defendant had she not been injured. However, the *facts* are that at the time of the injury her employer was putting aside this potential benefit for her and that the injury prevented a continuation of this potential toward a vested interest. As the result of her injury she must find some other way of providing income for retirement. The pension payment was a part of her weekly wage.

(b) *Group Insurance*

For each week of plaintiff's employment the defendant contributed $2.63 as one-half of the premium for a group plan which provided insurance coverage for the plaintiff. Plaintiff paid the other half of the premium.

The defendant argues that because the plaintiff has not chosen to pay her share of the premium after her injury, she should not be given credit in the form of increased compensation benefits. This contention cannot be sustained.

Had the employer not made these weekly payments, plaintiff, in order to provide the same protection, would have been required to pay premiums therefor out of her own funds. These payments by the defendant are likewise included in plaintiff's weekly wage.

(c) *Vacation and Holiday Pay*

Each year on seven holidays and for a one-week vacation period, defendant company would close but would pay its employees the usual weekly pay. An official of defendant company translated into dollars and cents the vacation and holiday pay which plaintiff received in addition to her weekly pay check. The total was $2.68 per week.

Plaintiff claims these items represent part of her compensation for the days on which she actually worked, and, therefore, should be included.

Defendant says that to include these items would be to allow plaintiff a larger wage base than if she had not been injured and were still employed by the defendant, and would actually give her double compensation for vacations and holidays.

Upon obtaining a job an employee usually gears his monetary obligations and future plans to the total of his recompense. Vacation and holiday pay must be considered in the same class as a pension. All three involve an employee's future. In each instance for every week the employee worked he earned something to be enjoyed in the *future*.

If at any particular time the plaintiff did not work on a vacation or holiday, and yet was paid therefor, it was only for the reason that, prior thereto, she had earned the paid free time under the terms of her working agreement with her employer at the rate of $2.68 per week.

As long as she continued to work she could look forward to 12 days of paid free time each year. Her injury obliterated this pleasant prospect.

A day such as these cannot be equated with a day on which she is physically unable to work and to enjoy other pursuits and for which she receives compensation in a substantially less amount than the

wages she could earn if she had not been injured. In this respect, plaintiff also lost an advantage which was recompensed under the contract of employment and measurable in money. Nor can such a day be equated with a day for which an employee receives compensation on lay-off.[3]

Holiday and vacation credits should have been included in determining plaintiff's average weekly wage.

Plaintiff's weekly hourly rate of earning, $60, plus fringe benefits totalling $7.91 per week, made plaintiff's average weekly wage the sum of $67.91

*II. Should plaintiff be allowed travel expenses at 8 cents per mile and a meal allowance for trips taken to receive medical care?*

MCLA § 412.4 (Stat Ann 1968 Rev § 17.154) required that "The employer shall furnish, or cause to be furnished, * * * reasonable medical, surgical and hospital services and medicines or other attendance or treatment recognized by the laws of this state as legal, when they are needed".

(a) *Mileage*

Plaintiff received medical treatment at Evart and at Grand Rapids. There was no practical form of public transportation over the 18–1/2 miles from her home to Evart. Between these points she made 108 trips via automobile, a total of 3996 miles. Plaintiff presented no evidence as to the cost of travel.

The referee arbitrarily allowed 8 cents per mile. The appeal board confirmed on the basis that this did not exceed the 9 cents per mile then allowed state employees under the Standard Travel Regulations.

---

[3] Both parties cited *General Motors Corporation v. Unemployment Compensation Commission* (1951), 331 Mich 303, as authority for their contrary positions.

At the time of injury, Rule 15 of the Workmen's Compensation Department Rules required the employer to pay travel expenses incident to the employee's examinations and treatments.

Defendant claims that travel expenses do not constitute medical expenses and that an allowance of 8 cents per mile is improper. It states that the Federal government allows only 5 cents a mile in computing deductible medical expenses for income tax purposes and, further, that to compute deductions for an automobile used in business, the same government allows the taxpayer to use "the standard mileage rate of 10 cents per mile for the first 15,000 miles and 7 cents in excess thereof".

The act requires the furnishing of medical services—nothing less. If an injured employee were unreasonably required to pay out money for transportation to receive these services then the employee would be receiving something less than that which the act requires. Under the circumstances present here it would be unreasonable to require plaintiff to travel 37 miles at her own expense to receive each medical treatment at Evart.

We take judicial notice of this state's Standard Travel Regulations and of their having been designed to provide reimbursement, not gain or loss, to state employees who are required to provide their own transportation. MCLA §§ 18.4(h), 24.261 (Stat Ann §§ 3.516[4][h], 3.560[161]). In the absence of any specific showing that they are unreasonable, we here adopt them. While plaintiff was receiving medical treatments these regulations allowed 9 cents per mile for travel. For her trips to Evart she is entitled to 9 cents per mile, totalling $359.64.

Via automobile plaintiff took 28 round trips for medical treatment to Grand Rapids. The record es-

tablishes that she lived 5–1/2 miles from Reed City, that public transportation—a bus—was available from there to Grand Rapids, and that it was 4 miles to the place of treatment from the bus station in Grand Rapids. Defendant has already paid plaintiff the $5.45 fare per round trip via bus between Reed City and Grand Rapids bus terminal. Since the record contains nothing even suggesting that such travel by bus would have been unreasonable, plaintiff is allowed only $5.45 for each of these 28 round trips, against which is credited the $5.45 which defendant paid for each trip.

It would be unreasonable to expect that plaintiff would have walked between her home and Reed City and between the bus station and the hospital or doctor's office in Grand Rapids. Between these points on visits to Grand Rapids she travelled 532 miles via automobile, for which she is entitled to 9 cents per mile.

(b) *Meal Allowances*

The appeal board allowed $1.25 for a meal for each of plaintiff's 28 trips to Grand Rapids.

By custom residents of this country generally partake of three meals at fairly regular intervals each day. Without doubt the plaintiff here and the claimants in other similar cases have received employer-furnished meals while hospital in-patients. Presumably employers believe it would be unreasonable to object thereto. Under certain circumstances it would be reasonable to grant a meal allowance to an injured employee who travels to receive medical treatments at a clinic or doctor's office, or as a hospital out-patient. Some of the circumstances which would determine reasonableness would be the time of day, distance travelled, the employee's habits, and, of necessity, whether a meal had in fact been consumed. It is not reasonable to grant a meal allow-

ance on the sole basis that someone other than the employee will foot the bill.

The record in this case does not show that plaintiff consumed even one meal during her travels to Grand Rapids, but does show that she herself scheduled her appointments for 4 p. m. and that she could have returned home from that city between 6 and 6:30 o'clock in the afternoon. There being no facts or inferences which reasonably established that she partook of food, no allowance for it should have been made. *Coates* v. *Continental Motors Corporation* (1964), 373 Mich 461, 467.

The decision of the Workmen's Compensation Appeal Board is modified as indicated herein. No costs, neither party having fully prevailed.

R. B. BURNS, J., concurred.

HOLBROOK, P. J. (*concurring in part and dissenting in part*). It is with reluctance that this writer adds anything to the excellently-written opinion of Judge KELLEY. The reason for the expression of views herein is based not upon a desire to depart from construing the Workmen's Compensation Act liberally for the benefit of the claimant herein, but because it is difficult to visualize holiday pay and vacation pay as pay in addition to the weekly earnings of the claimant.

Now it is true, as Judge KELLEY points out in his well-written opinion, that the company set aside $2.68 per week for holiday and vacation pay for the plaintiff herein. However, this was not like the pension fund or insurance fund which was set aside every week in addition to the weekly pay for the benefit of the claimant. The $2.68 per week was set aside to allow the claimant to have certain holidays and vacation days off from work and still to be paid

the regular weekly pay. The wages paid to the claimant, as this writer understands it, were on the basis of 40 hours per week at the hourly rate. This is for the period of 52 weeks each year and in the event there was a holiday in one of the weeks, the plaintiff would be paid for five days, although she would only be working four days. Likewise, during the week that she was on vacation when the shop was shut down, the $2.68 that had been set aside each week during the year would be used to take care of paying her for this vacation time off.[1] Such arrangements are commendable whether by contract or by voluntary arrangement between the employer and the employees in the interests of providing a good relationship. The employer benefits from this good relationship but it does not pay the employee any more than 52 weeks of pay. In other words, the claimant does have holidays and vacation time off from work. If the claimant worked on the holidays for the employer or on the vacation time off for the employer, then this writer could say that it should be included as the majority opinion does so include it. However, the arrangement does not provide for double pay during the holiday time off or double pay during vacation time off, and in the absence of such an arrangement, this writer is constrained to dissent from that part of the prevailing opinion of adding $2.68 per week to the base pay to figure compensation payments under the Workmen's Compensation Act. This writer concurs completely with the balance of the decision contained in the prevailing opinion.

---

[1] This practice *does not* increase the employer's gross amount of employees' wages based on the weekly rate. However, if we add the $2.68 per week to the actual wages paid, we would in effect add wages that were not actually paid. The other benefits considered in the majority opinion as being included as wages (to which this writer concurs), *i.e.*, insurance and pension benefits, were actually paid out by the employer *in addition* to the employee's wages.