551 P.2d 591

Heard STILL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

D & M Masonry Company, Respondent Employer,

Fidelity & Casualty Company of New York, Respondent Carrier.

No. 1 CA–IC 1357.

Court of Appeals of Arizona, Division 1, Department C.

June 29, 1976.

Rehearing Denied Aug. 10, 1976.
Review Denied Sept. 16, 1976.

Alston & Edwards, by Cecil A. Edwards, Jr., Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by W. C. Wahl, Jr., Phoenix, for respondent employer and carrier.

OPINION

NELSON, Judge.

Heard Still (Still) was injured while employed as a laborer for D & M Masonry Company (D & M). He filed a claim for workmen's compensation which was accepted by the Fidelity & Casualty Company of New York, the workmen's compensation carrier for D & M. After extensive medical treatment Still was eventually awarded a 25% disabliity to his right leg, a scheduled award for partial permanent disability. This determination by the insurance carrier, as well as Still's average monthly wage, was litigated before the Industrial Commission of Arizona. The hearing officer agreed with the insurance carrier's determinations, both as to the extent of

disability and as to the calculation of the average monthly wage. The only matter brought to this Court on certiorari is the propriety of the computation of the average monthly wage. We affirm the award of the Industrial Commission.

Still does not quarrel with the computation of the monthly wages he actually received. He urges, however, that in addition to this amount, he is entitled to credit for the amounts of money his employer is required to contribute to a Union Health and Welfare Fund and Pension Fund by virtue of a negotiated contract between the union and various employers, including D & M. The amounts were computed on the basis of twenty cents per hour worked for the Health and Welfare plan and thirty cents per hour worked for the Pension Fund. These funds are paid directly by the employer into union trust funds for these purposes, and it is clear that the employer has no role in determining when, if ever, or to what extent any employee would benefit from these funds. That is a matter between the unions in question and their members. As a matter of fact, Still was, at the time of the hearings before the Industrial Commission, already receiving a union pension. This fact does not alter our conclusion that these fringe benefits paid directly to the union trust funds by the employer are not includable in the computation of Still's average monthly wage at the time of injury, A.R.S. § 23–1041A.

The hearing officer based his decision to exclude the funds on four grounds: (1) Still was not paid the fifty cents per hour by his employer; (2) the amount was not reported by the employer for workmen's compensation premium computations; (3) the amounts were not included by Still in his gross income for federal or state income tax purposes; (4) Still himself was not receiving the fifty cents per hour at the time of his injury, and might never receive the benefits.

 We do not believe that the second and third reasons are determinative. While there is authority that the amount of and the computation of premiums for workmen's compensation insurance have some relationship to the basic wage of the employee, *Gene Autry Productions v. Industrial Commission*, 67 Ariz. 290, 195 P.2d 143 (1948); *Powell v. Industrial Commission*, 104 Ariz. 257, 451 P.2d 37 (1969), it cannot be seriously contended that the failure of the employer to include items of compensation for purposes of premium computations which would otherwise be considered wages within the meaning of that term as set out in A.R.S. § 23–1041A, supra, would exclude these items from use in calculating a given employee's average monthly wage for workmen's compensation benefits. *Matlock v. Industrial Commission*, 70 Ariz. 25, 215 P.2d 612 (1950). Similarly, this Court has recently indicated that requirements of federal law, whether they be the minimum wage law or the Internal Revenue Code, either because of the alleged taxable or non-taxable nature of the income, have no direct effect on the determination of average monthly wage under the workmen's compensation laws of Arizona. *Harvey Auto Supply Inc. v. Industrial Commission*, 25 Ariz.App. 274, 542 P.2d 1154 (1975); *Hobbs v. Industrial Commission*, 23 Ariz.App. 422, 533 P.2d 1159 (1975); *Springer v. Industrial Commission*, 23 Ariz.App. 429, 533 P.2d 1166 (1975). See also: *Cudahy Packing Company v. Industrial Commission*, 7 Ariz.App. 335, 439 P.2d 307 (1968). Accord, re minimum wage, *McCrudden v. Venditto Bros. Inc.*, 103 R.I. 201, 235 A.2d 878 (1967). Contra, re minimum wage law: *Trujillo v. Tanuz*, 85 N.M. 35, 508 P.2d 1332 (1973).

This is a case of first impression in this jurisdiction. Counsel have referred us to decisions in other jurisdictions bearing on these questions. Regarding the definition of the term "wages", we have been referred to a federal decision interpreting this term under the National Labor Relations Act. *Inland Steel Co. v. National Labor Relations Board*, 170 F.2d 247 (7th Cir. 1948). The reasoning of the cases set forth above regarding the Minimum

Wage Law and the Internal Revenue Code is applicable in this instance. See also: *In the Matter of Victory Apparel Manufacturing Corporation*, 154 F.Supp. 819 (D. N.J., 1957). However, we will look to the Arizona statutes and decisions to make this determination. *Harvey, Springer* and *Hobbs*, supra.

Similarly, we find the decisions from other states unpersuasive regarding the fringe benefit issue. Counsel for Still has cited two cases involving fringe benefits not paid directly to the employee. *Schumacher v. Schumacher*, 67 S.D. 46, 288 N.W. 796 (1939); *Hite v. Evart Products Company*, 34 Mich.App. 247, 191 N.W.2d 136 (1971). The Court has found two additional decisions involving "fringe benefits", *Texas Employers' Insurance Association v. Metz*, 315 S.W.2d 187 (Tex. Civ.App.1958); *Bananno v. Employers Mutual Liability Insurance Company of Wisconsin*, 229 So.2d 923 (La.App.1974).

Three of the cases are not in point. In *Schumacher v. Schumacher*, supra, a father-son farm relationship was involved. The son, the employee in question, received room, board, clothing, church dues, washing, life insurance premiums and a share of the crop raised. The primary issues were whether there was an employer-employee relationship, and whether the son was covered by the compensation insurance policy. The question regarding the weekly wage computation, amounting to $7.50 per week, was whether there was evidence to support it. The court concluded that evidence was generally sufficient, without discussing why each item was included, or what the statutory basis for the reasoning was.

The Louisiana court (*Bananno*, supra), termed meals furnished to cafeteria employees as "fringe benefits". A reading of the decision clearly indicates that the meals were part of the wage paid, were furnished directly to the employee, and were in no way fringe benefits of the general type we are here concerned with.

In *Texas Employers' Insurance Association v. Metz, supra,* the Texas court held that two weeks' vacation pay was includable for purposes of computing the employee's average weekly pay over a 52 week period for workmen's compensation pay. In effect, the court held that the vacation pay was regular pay for purposes of the Texas statutes regarding the computation of average monthly wage. There was no evidence cited as to how the vacation pay was accrued, if it was, or if there was separate funding for the benefit.

The only case which is directly on point is *Hite v. Evart Products Company*, supra. The question presented to the Michigan court, although broader than the question here, is essentially the same:

"I. In determining an employee's weekly wage for the purpose of workmen's compensation should the value of remuneration in the form of vacation pay, holiday pay, *and the employer's contributions to insurance and pension plans be included?*" *Hite v. Evart Products Company*, supra, 34 Mich.App. at 252, 191 N.W.2d at 138. (Emphasis supplied)

Counsel for the respondents urge that the fact that the employer provided these benefits without the necessity of union compulsion differentiates the case from the one at bar. We disagree. There are requirements for the vesting of pension rights in each case, and the employee must get sick, or find his family in similar straits, to avail himself of the benefits of the insurance.

The benefits are no more nor less speculative in *Hite* than they are here. Under the theory presented here and in *Hite*, it is the impact of the potential or actual benefits on the employee that is critical, not the methodology of their funding. If the reasoning is followed to its logical conclusion, employers' contributions to potential employees' benefit programs mandated by the federal and state governments should also be included, such as social security contributions, unemployment compensation premiums, and maybe even workmen's com-

pensation premiums. Michigan law, like Arizona's, required the average wage to be determined at the time of injury. Interestingly the Michigan legislature, after the Michigan Workmen's Compensation Appeal Board included the value of the pension and group insurance premiums in the computation of average monthly wage, but before the court decided the *Hite* case, amended the Michigan statutes to specifically exclude the fringe benefits in the computation of the average weekly wage. *Hite v. Evart Products Company,* supra. Thus no jurisdiction now authorizes what Still seeks this Court to provide.

A review of Arizona decisions makes it clear that even if Michigan's legislature had not obviated the result reached in *Hite,* supra, the decison would not have been persuasive here.

An early Arizona decision gives us an insight into the very problem we are confronted with here. Although concerned with the concept of bonuses based upon individual effort of the employee as opposed to bonuses generally, the language of the Arizona Supreme Court in *Barron v. Ambort,* 64 Ariz. 209, 167 P.2d 925 (1946) is instructive:

> "The commissions here were in no sense a bonus in the nature of a gratuity or an amount allowed from the profits of the business, which might or might not be paid to the employee. It is our view, however, that whether the earnings are denominated bonus or commissions, *if they are the result of the personal efforts of the employee and would be recoverable by him in an action at law* [against the employer], they constitute wages or earnings. Where a bonus is paid generally to employees at the end of a year, or otherwise, out of the profits of the employer's business, it does not constitute personal earnings of any particular employee. The payment in such case results from the *collective efforts*

of those employed in the business, the management of its operation and the capital involved. Such a bonus cannot be considered in calculating the average monthly wages or earnings of employees under the terms of the compensation law." 64 Ariz. at 212, 167 P.2d at 927. (Bracketed material and emphasis supplied.)

Whether the benefits are obtained by virtue of a union agreement, as here, or by the effort of government, as in the case of social security contributions and unemployment insurance contributions, they are clearly obtained by "collective effort" and not by the individual effort of the employee. They are also not paid to the employee by the employer and would not be recoverable in an action at law by him against the employer.

These latter concepts of "paid by the employer" and "recoverable by an action at law against the employer" were recently reviewed by this Court in *Springer v. Industrial Commission,* supra, 23 Ariz.App. 429, 533 P.2d 1166 (1975). In rejecting the argument that a waitress' tips should be considered part of her wages for purposes of A.R.S. § 23–1041A, in spite of the fact that the waitress' base wage was far below the minimum wage required by federal law and could have been recovered from the employer in an action at law if the difference had not been made up in tips, as it was, the Court said:

> "Her [Springer's] reasoning is that under the federal minimum wage law she could maintain an action against her employer for the difference between her base wage (90 cents per hour) and the minimum wage ($1.60 per hour) if the difference were not in fact made up by tips she received. We reject this argument, however, since we find that while the differential, if not made up by tips, would be recoverable against the employer, *it is not 'wage' paid by the employer*

*unless he is in fact required to pay it.* Since the employer was not called upon to do so in this case, it cannot be considered in computing the monthly wage." 23 Ariz.App. at 431, 533 P.2d at 1168. (Bracketed material and emphasis added.)

While another recent decision of this Court may appear to be in conflict with *Springer v. Industrial Commission,* supra, it is not. In *Harvey Auto Supply Inc. v. Industrial Commission,* supra, 25 Ariz.App. 274, 542 P.2d 1154 (1975), we said that what was actually "paid" as a wage was not always determinative as against what was "earned". The decision involved a closely held family corporation where a family employee had an approved salary of $1,000 per month which he could take in either cash or stock. He had not fully received the authorized salary for the time he worked before he was injured. The evidence clearly reflected, however, that he had worked the two months, that his services were properly valued at $1,000 per month, and he later did receive the salary in stock. The waitresses in *Springer,* supra, who were actually "earning" much more than the 90 cents per hour base wage, were, however, only "paid" 90 cents per hour from their employer.

Since the fringe benefits in question were not the result of Still's individual labors, but the fruits of the collective bargaining efforts of his union, and since any benefits paid to him came from the union trust funds in question and not directly from the employer, the hearing officer properly excluded the items in computing Still's average monthly wage.

The award is affirmed.

HAIRE, Chief Judge, Division 1 and EUBANK, P. J., concurring.