Orval L. RAGLAND, Appellant,

v.

MORRISON–KNUDSEN CO., INC., Aetna Casualty and Surety Co., Crawford and Company, and Alaska Workers' Compensation Board, Appellees.

No. S–1333.

Supreme Court of Alaska.

Aug. 29, 1986.

Chancy Croft, Fairbanks, for appellant.

Dennis E. Cook, Schaible, Staley, DeLisio & Cook, Inc., Anchorage, for appellees.

Before RABINOWITZ, C.J., and MATTHEWS, BURKE, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

The sole issue in this workers' compensation case is whether the value of fringe benefits paid by the employer on the employee's behalf should be considered "wages" for the purpose of computing the

employee's average weekly wage. We conclude that the readily identifiable and calculable value of fringe benefits should be included in the wage determination.

## I. FACTS AND PROCEEDINGS

Orval Ragland was injured in the course of his employment with Morrison-Knudsen Co., Inc. (M–K) on July 30, 1982. It is undisputed that he is entitled to compensation, which he has received based on his 1981 income pursuant to AS 23.30.-220(a)(2).[1] Also, it is undisputed that his union fringe benefits are vested.

Ragland sought to include in the calculation of his average weekly wage the value of his vested union fringe benefits, including pension, health and welfare, legal fund and training trust benefits. The Alaska Workers' Compensation Board (Board) increased Ragland's average weekly wage by the amount of M–K's contributions to vested pension benefits, but not to other benefit funds, reasoning that he had not "established a 'real economic loss' of other fringe benefits."

Ragland appealed to the superior court. Judge Mary E. Greene affirmed the Board's decision, relying on the U.S. Supreme Court's interpretation of comparable federal law in *Morrison-Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs*, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983) [*Hilyer* ].·

Ragland then appealed to this court. He asks that we order the Board to adjust his average weekly wage upward by the amount of his employer's 1981 contributions to the remaining vested union fringe benefits.

## II. DISCUSSION

At the time of Ragland's injury, former AS 23.30.265(20) provided:

> [W]ages means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, and includes the reasonable value of board, rent, housing, lodging or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer.

AS 23.30.265(20), *amended by* AS 23.30.-265(15) (1983).[2]

This court has not previously addressed the scope of the term "wages" under the Alaska Workers' Compensation Act. We may look for guidance to federal cases interpreting the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1982), *amended by* 33 U.S.C. §§ 901–948a (Supp.1984), upon which the Alaska Act is modeled. *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1048 n. 12 (1978).

Former 33 U.S.C. § 902(13) is virtually

---

**1.** AS 23.30.220(2) provides in relevant part:
*Determination of average weekly wage.* Except, as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury is the basis for computing compensation and is determined as follows:
(2) the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury.

**2.** In 1983, the Alaska legislature amended the statute. AS 23.30.265(15) now provides:
(15) "gross earnings" means periodic payments, by an employer to an employee for

employment before any authorized or lawfully required deduction or withholding of money by the employer, including compensation that is deferred at the option of the employee, and excluding irregular bonuses, reimbursement of expenses, expense allowances, and any benefit or payment to the employee that is not taxable to the employee during the pay period; the value of room and board to the employee may be considered in determining gross earnings; however, the value of room and board that would raise an employee's gross weekly earning above the Alaska average weekly wage at the time of injury may not be considered.

identical to former AS 23.30.265(20).[3] In *Hilyer*, the Supreme Court held that fringe benefits were not included in the definition of wages under the federal statute. 461 U.S. at 637, 103 S.Ct. at 2052, 76 L.Ed.2d at 204.

The Court analyzed fringe benefits under the "similar advantage" clause and concluded that the present value of benefit trust funds cannot be converted easily into a cash equivalent. Therefore benefit trust funds are not "a similar advantage" to board, rent, housing or lodging. *Hilyer*, 461 U.S. at 630, 103 S.Ct. at 2048, 76 L.Ed.2d at 199. We think fringe benefits are better analyzed as part of "the money rate" at which an employee is paid, *see* Harry v. M–K Rivers, A.W.C.B. No. 81–010 (January 19, 1981); AS 23.30.265(20).

The Court also discussed various policy reasons why fringe benefits should not be included.[4] It rejected the argument that the value could be calculated by reference to either the employer's costs or the value of the employee's expectations. *Hilyer*, 461 U.S. at 630, 103 S.Ct. at 2048, 76 L.Ed.2d at 200. It states that "the employer's cost is irrelevant in this context, it measures neither the employee's benefit nor his compensation." *Id.* It noted that an employee could not purchase private policies on the open market for the same amount the employer contributed to employee trust funds. *Id.*

However, the fact that an award based upon fringe benefits might not adequately compensate an injured employee is not a good reason to deny the award entirely. As Justice Marshall states in his dissent, "it is better to be roughly right than totally wrong." *Id.* at 642, 103 S.Ct. at 2055, 76 L.Ed.2d at 208 (Marshall, J. dissenting).

The *Hilyer* Court concludes that the employer's costs do not measure compensation because under the collective bargain-

ing agreement the employer's costs were not directly tied to any individual employee's labors. *Id.* at 630, 103 S.Ct. at 2048, 76 L.Ed.2d at 200. Further, the employees under that agreement had no control over the level of funding or the benefits provided. *Id.* at 631, 103 S.Ct. at 2049, 76 L.Ed.2d at 200.

That rationale does not apply to the case before us. Under M–K's collective bargaining agreement with Ragland's union, a total hourly wage rate is negotiated by the union and M–K. Union members vote to determine how the total wage is divided between cash payments and fringe benefits. The contribution to fringe benefits is thus not speculative, but rather is tied directly to the number of hours worked by the employee. We believe this total hourly wage, no matter how it is apportioned between cash payments and fringe benefits, is "the money rate at which the service rendered is recompensed." AS 23.30.-265(20), *amended by* AS 23.30.265(15) (1983).

There is no principled distinction between cash payments and payments into a fringe benefit plan. Employees may bargain to receive cash only, or may agree to forego some cash in exchange for fringe benefits. However, their compensable earning power is the same in either case. *See Hilyer*, 461 U.S. at 641, 103 S.Ct. at 2054, 76 L.Ed.2d at 207 (Marshall, J. dissenting).

The Court in *Hilyer* also reasons that the value to the employee of each fund is speculative because it depends on factors which are unpredictable, such as whether the employee's interest vested[5] and his "need for the services" which the fringe benefits provide. *Hilyer*, 461 U.S. at 631, 103 S.Ct. at 2049, 76 L.Ed.2d at 200; *see also Olivera v. Mat-Su/Stephan & Sons, J.V.*, A.W.C.B. No. 84–0327 (September 25, 1984). In *Still v. Industrial Commission*, 27 Ariz.App.

---

**3.** After the *Hilyer* decision, 33 U.S.C. § 902(13) was amended to explicitly exclude fringe benefits from the definition of wages. *See* 33 U.S.C. § 902(13) (Supp.1984). 33 U.S.C. §§ 945–47 were repealed.

**4.** The Court also relied on legislative history and agency interpretation, neither of which are applicable here.

**5.** As noted above, Ragland's interest in union fringe benefits has vested.

142, 551 P.2d 591, 592 (1976), the court has reasoned similarly that fringe benefits should be excluded because the employee is not actually receiving the contribution payments at the time of injury and might never receive them.

It is indeed speculative as to whether Ragland would have "needed" the benefits if he had continued to work for M–K, or whether he will "need" them in the future now that he is disabled. However, the *facts* are that at the time of the injury M–K was contributing to Union benefit trusts for Ragland as part of his compensation and that his injury prevented his continuing eligibility in these benefit programs. *See Hite v. Evart Products Co.*, 34 Mich.App. 247, 191 N.W.2d 136, 139 (1971).

It is in the nature of any health or legal insurance plan, whether provided by an employer or purchased in the marketplace, that the beneficiary might never need payments or services from the plan. It is the coverage itself which is the benefit, and which the disabled employee must now find some other way of providing.[6]

In holding against the inclusion of fringe benefits, the *Still* court reasoned that the employer is contributing to the union, which administers the trust funds, rather than to the employee. *Still*, 551 P.2d at 592.

However, it cannot seriously be maintained that the union is the beneficiary of the employer's contributions. "The beneficiaries are the employees. The funds are no more than a channel; they are merely a means by which the company provides life insurance, health insurance, retirement benefits, and career training for its employees." *Hilyer v. Morrison-Knudsen Construction Co.*, 670 F.2d 208, 211 (D.C.Cir. 1981), *rev'd sub nom, Morrison-Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs*, 461

U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983).

The *Still* court also compared benefit contributions to year end bonuses, which it said were the result of "collective" rather than "personal" effort. Since the benefits are obtained as the result of a union agreement, the court concluded that they are not attributable to the individual efforts of the employee. 551 P.2d at 594.

Under this reasoning, however, even wages would appear to be excluded when they are established by a collective bargaining agreement. The fact that compensation is provided through a union agreement rather than through individual contracts with each employee should not preclude employees from receiving that compensation when they are disabled. The benefits are compensation for an employee's services regardless of how they are negotiated. *See Hilyer*, 670 F.2d at 212 n. 7.

Fringe benefits are often an important part of an employee's earning power. When the goal is to compensate a disabled employee, it is "harsh simply to ignore part of an employee's earnings power when calculating benefits." *Hilyer*, 461 U.S. at 647, 103 S.Ct. at 2057, 76 L.Ed.2d at 210 (Marshall, J. dissenting).

■■■ We therefore hold that readily identifiable and calculable values received by an employee should be included in his wage determination. Given the goal of workers' compensation laws to assure compensation for actual loss, *see* 2 A. Larson, The Law of Workmen's Compensation § 60.12, at 10–564 (1983), and the policy of construing ambiguities in favor of the employee, *Seward Marine Services, Inc. v. Anderson*, 643 P.2d 493, 497 (Alaska 1982), we conclude that the definition of wages should "include all items of compensation or advantage agreed upon in a contract of hiring which are measurable in money,

6. We have held in a personal injury case that the plaintiff was entitled to the amount of actual contributions to union benefit funds that would have been made on his behalf by his employer. *Alaska Airlines v. Sweat,* 568 P.2d 916, 935 (Alaska 1977). Even though the plaintiff had not purchased replacement coverage, he could recover for the *lost protection* over a period of years. *Id.*

whether in the form of cash or as an economic gain to the employee." *Hite*, 191 N.W.2d at 138, *quoting Leslie v. Reynold,* 179 Kan. 422, 295 P.2d 1076, 1083 (Kan. 1956).

The decision of the superior court affirming the Alaska Workers' Compensation Board is REVERSED and the case REMANDED for proceedings consistent with this opinion.