Leslie TABOR *v.* LEVI STRAUSS & CO. and The Home Insurance Co.

CA 90-58                                                801 S.W.2d 311

Court of Appeals of Arkansas
Division I
Opinion delivered December 26, 1990

72

*Martin, Trumbo & Sterling*, by: *Brent Sterling*, for appellant.

*Bassett Law Firm*, by: *Gary V. Weeks* and *Woody Bassett*, for appellees.

MELVIN MAYFIELD, Judge. Appellant Leslie Tabor appeals a decision of the Workers' Compensation Commission which found the appellees had paid appellant compensation benefits at the appropriate wage rate.

The appellant was employed by appellee Levi Strauss & Company on June 15, 1988, when she sustained a compensable injury to her right hand. As a result of her injury, she was off work from June 15, 1988, through August 19, 1988, and received

temporary total disability benefits of $152.57 per week. Appellees paid all medical expenses.

On January 10, 1989, a hearing was held at which the appellant contended her proper compensation rate was $189.00 per week; that all negotiated employee benefits should be considered in computing the proper compensation rate; that she was entitled to additional compensation based upon the difference between the maximum rate and the rate at which she was paid; and that her attorney was entitled to a fee based upon the additional compensation due.

In an opinion filed May 10, 1989, the administrative law judge stated:

> We shall first look at the claimant's contention that fringe benefits should be included in the determination of the proper compensation rate. This one is a non-starter as there is no testimony that the claimant while off work as a result of a job related injury at Levi Strauss loses any of the fringe benefits. Specifically, there is testimony to the contrary that all fringe benefits remain intact even including vacation pay. By definition, if the benefits are not lost as a result of the compensable injury, their loss cannot be considered in determining the proper rate of compensation. Therefore, the issue as framed by the claimant does not exist in this case and it is not necessary to decide the question.

The law judge held that the formula for computing the average weekly wage of a pieceworker as set out in the Arkansas Workers' Compensation Law is not vague or ambiguous; that a respondent in computing the average weekly wage may disregard weeks in which earnings are inordinately low; and that the claimant was entitled to a weekly compensation rate of $152.66, but respondent had paid the claim at the rate of $152.57, an insignificant difference of $.09. The Commission affirmed and adopted the opinion of the law judge.

At the time of appellant's injury, she was a member of the union, doing piecework under a negotiated union contract which covered wages, overtime, job classifications and benefits including bonus, holidays, vacation, hospitalization insurance, life

insurance, disability insurance, sick pay, sick leave, pensions, bereavement pay, seniority rights, and personal and family leave. Under the terms of the union contract, an employee is entitled to receive all benefits while off work because of a work-related injury, and during the time appellant was receiving workers' compensation benefits, she was paid for some holidays and did in fact draw vacation pay even though she was not working. Also, if appellant's dependent husband became sick or was injured during the time she was off work, appellant's insurance at Levi Strauss would cover him.

For vacation pay, piece-rate workers are paid their average hourly rate (determined by the company), and appellant is entitled to three weeks vacation. Under the contract, appellant and all other employees who had at least one year of service as of October 1, 1986, and were on the payroll when the bonus was paid, received a bonus of $600.00. Employees who have completed their probationary period are paid for eleven holidays per year figured at their previous quarterly average for eight-hour days. And the value of the company-provided medical, life and disability insurance is $.74 per hour.

Appellant first argues that fringe benefits for which the employee and employer have negotiated pursuant to a contract were properly before the Commission, and those benefits can be readily identified and calculated and should be included in the calculation of an injured employee's compensation rate. Appellant contends the Arkansas Workers' Compensation Law provides that a temporarily or permanently disabled employee may receive disability benefits based on the employee's average weekly wage; that the definition of "wages" as set forth in Ark. Code Ann. § 11-9-102(8) (1987) includes the value of all fringe benefits negotiated pursuant to a union contract because they are a viable part of the "money rate" for which the employee is recompensed; and that the term "wages" should be liberally construed in accordance with the remedial purpose of the workers' compensation statutes. Appellant further argues that in order to be "just and fair" to all parties the value of negotiated fringe benefits must be included in the calculation of an injured employee's average weekly wage regardless of whether or not those fringe benefits are lost while an employee remains off work due to a compensable injury. Specifically, appellant asks this

court to find the fringe benefits of bonuses, vacation pay, holiday pay, medical insurance, life insurance and weekly disability insurance to be included as part of the "money rate" as set forth in the statutory definition of "wages." The resolution of this issue presents a question of law, not of fact.

Appellant relies on *Ragland* v. *Morrison-Knudsen Co., Inc.*, 724 P.2d 519 (Alaska 1986), for the proposition that fringe benefits should be included in the definition of wages. That case, however, is distinguishable from the case at bar. In that case, it is stated:

> Under M-K's collective bargaining agreement with Ragland's union, a total hourly wage rate is negotiated by the union and M-K. Union members vote to determine how the total wage is divided between cash payments and fringe benefits. The contribution to fringe benefits is thus not speculative, but rather is tied directly to the number of hours worked by the employee. We believe this total hourly wage, no matter how it is apportioned between cash payments and fringe benefits is "the money rate at which the service rendered is recompensed."

724 P.2d at 521. In the instant case, there is no evidence that union members have negotiated for a total hourly wage rate and then voted to determine how that total wage is to be divided between cash payments and fringe benefits.

Similarly, we do not find appellant's case of *Ashby* v. *Rust Engineering Co.*, 559 A.2d 774 (Me. 1989), to be applicable to the case at bar. In that case, the court stated:

> We are not dealing here with the traditional fringe benefit arrangement where the employer unilaterally establishes a plan in which the employee may have no vested rights, and contributes an amount that has no specified value per employee or per unit of time worked and that may in fact vary from year to year at the employer's discretion. Instead, this is a case in which the labor contract specifies an amount that the employer must pay per unit of time worked and the employer totally relinquishes control over the funds just as if they were delivered in the pay envelope.

559 A.2d at 775.

Appellant also relies on *Ex parte Murray*, 490 So. 2d 1238 (Ala. 1986), but that case is not in point. The Alabama statute states "whatever allowances of any character made to an employee in lieu of wages are specified as part of the wage contract and shall be deemed a part of his earnings." The Alabama court held that to read the broad term "allowances of any character" to exclude insurance premiums is unreasonable. However, the Alabama statute is considerably broader than our statute which contains no such provision.

Appellant also relies on *Munroe Regional Medical Center v. Ricker*, 489 So. 2d 785 (Fla. Dist. Ct. App. 1986), where the court held that vested pension or retirement benefits must have a real present-day value to be included in the statutory definition of average weekly wage. That is, the worker must be able to withdraw funds at will or vesting must be assured. In the instant case, there is no evidence that appellant may "withdraw the funds at will" or that vesting is assured.

Ark. Code Ann. § 11-9-102(8) (1987) provides:

> "Wages" means the money rate at which the service rendered is recompensed under the contract of hire in force at the time of the accident including the reasonable cash value of board, rent, housing, lodging, or similar advantage received from the employer and including gratuities received in the course of employment from others than the employer when gratuities are received with the knowledge of the employer; . . . .

There is a split of authority on the issue of whether fringe benefits should be included in the calculation of "wages" for the purpose of workers' compensation. The leading case, which represents the majority view on fringe benefits, is *Morrison-Knudsen Construction v. Director, Workers' Compensation Programs*, 461 U.S. 624 (1983); 2 Larson, *The Law of Workmen's Compensation* § 60.12(b) (3/87).

In *Morrison-Knudsen*, the United States Supreme Court held that an employer's contributions to union trust funds for health and welfare, pensions, and training are not "wages" for the purposes of computing compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act. Under that

act:

> "Wages" means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of injury, including the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer.

461 U.S. 629, citing 33 U.S.C. § 902(13). According to the Supreme Court, employer's contributions are not "money . . . recompensed" or "gratuities received . . . from others." Therefore, the narrow question is whether they are a "similar advantage" to "board, rent, housing, lodging." The Court held they were not; reasoning that board, rent, housing, or lodging are benefits with a present value readily converted into a cash equivalent, while the present value of trust funds could not be so easily converted. The Court rejected the argument that their value be determined by reference to the employer's cost because that cost was irrelevant, measuring neither the employee's benefit nor his compensation.

Other state courts have held fringe benefits not to be included within the definition of "wages."

In *Linton* v. *City of Great Falls*, 749 P.2d 55 (Mont. 1988), the court held that health insurance, retirement contributions, and vacation time earned under a union contract were excluded from the compensation calculation. Although the Montana statutory definition of "wages" is more narrow than that contained in the Arkansas statutes (that statute defines "wages" as "the average gross earnings received") that court specifically adopted the rationale of the United States Supreme Court in the *Morrison-Knudsen* case, *supra*.

Likewise, in *Nelson* v. *SAIF*, 731 P.2d 429 (Or. 1987), the court held that money paid by the employer into the pension fund and for premiums for medical and dental insurance was not includable in the daily wage the employee was receiving for purposes of calculating the amount of compensation to which he was entitled. That court took a different approach, however, and ignored the statute defining "wages" for the purpose of workers' compensation and focused on a statute stating the injured

employee's average weekly wage is to be determined by multiplying "the daily wage the worker was receiving." That court reasoned:

> [C]laimant was not receiving the funds in a literal sense. They never came into his physical possession. The money paid for medical and dental insurance was nothing more or less than premiums. The individual members of the class insured, i.e., the employees, had no right *ever to receive* any part of the funds created by payment of those premiums. Until an employee might need medical or dental care, he would not even be entitled to any benefit of the insurance created by payment of the premiums, let alone any part of the money. Until an employee became eligible, through retirement or termination, he would have no right to receive any money in the pension fund.

731 P.2d at 432 (emphasis in *Nelson*).

In *Still* v. *Industrial Commission*, 551 P.2d 591 (Ariz. Ct. App. 1976), the court held fringe benefits paid by the employer into union health, welfare, and pension funds not includable in the computation of a claimant's average monthly wage. That court reasoned that since the fringe benefits in question were not the result of the appellant's individual labor but rather were the fruits of a collective bargaining effort by the union they were properly excluded.

And in *Schlotfeld* v. *Mel's Heating and Air Conditioning*, 445 N.W.2d 918 (Neb. 1989), the court stated:

> The majority view appears to be the more practical and reasonable approach and is the position which we adopt. It seems clear from the definition of "wages" provided in § 48-126 that fringe benefits are not gratuities, nor are they "similar advantages" to board or lodging. The money paid to the union funds should not be considered part of the "money rate" just because it is specified at a per hour rate. The money is not paid to the employee and is not the result of the employee's individual labors, but is the fruit of collective bargaining.

445 N.W.2d 927.

■ We find the majority view to be persuasive and decline to find that the employer contributions to appellant's fringe benefits of medical, life, and disability insurance in the instant case be included in the term "wages." Appellant had no right to receive any part of these contributions or any benefit from such unless she or her dependent became eligible through illness, death, or disability. Moreover, these benefits accrued to appellant not by virtue of any individual effort on her part but solely through the collective bargaining efforts of the union. Therefore, under the circumstances of this case, those benefits should not be included in the determination of appellant's proper compensation rate.

■ Nor in the case of a piece-rate worker can bonus, vacation, and holiday pay be included in the calculation of the proper compensation rate. Ark. Code Ann. § 11-9-518(a)(2) (1987) provides:

> Where the injured employee was working on a piece basis, the average weekly wage shall be determined by dividing the earnings of the employee by the number of hours required to earn the wages during the period not to exceed fifty-two (52) weeks preceding the week in which the accident occurred and by multiplying this hourly wage by the number of hours in a full-time workweek in the employment.

Under this statute, "earnings are to be divided by the number of hours required to earn the wages" and clearly in the instant case, no hours were required to be worked to receive these earnings. Therefore, under our statute relating to piece-rate work, bonus, holiday and vacation pay is not to be included in the computation of the average weekly wage, and it is not necessary in the instant case for us to decide whether these fringe benefits are included in the definition of "wages" under § 11-9-102(8).

Finally, we address appellant's contention, in her first argument, that the issue of fringe benefits was properly before the Commission. We think appellant has misconstrued the Commission's finding on this matter. In the law judge's opinion, which was affirmed and adopted by the Commission, the law judge did not hold that appellant's contention was "not properly before the commission" but rather stated:

> By definition, if the benefits are not lost as a result of the compensable injury, their loss cannot be considered in determining the proper rate of compensation. Therefore, the issue as framed by the claimant does not exist in this case and it is not necessary to decide the question.

We are not certain exactly what the law judge meant by this statement. However, in this particular case it is not necessary for us to decide whether benefits must be lost to be considered in determining the proper rate of compensation. As we have stated above, in this case employer contributions to medical, life, and disability insurance cannot be included in the definition of "wages." And whether or not holiday and vacation pay are included in the definition of "wages" makes no difference because in the instant case they are excluded due to the statutory method of determining the average weekly wage of an employee working on a piece basis.

Appellant's next two arguments are related. Appellant argues the appellees and the Commission's application of the piece-rate formula in calculating her average weekly wage is incorrect, and that she should be entitled to the maximum temporary total disability rate of $189.00. Specifically, appellant contends the value of negotiated fringe benefits should be included, that the overtime wages were incorrectly calculated, and that the appellees incorrectly included the week of injury in the calculation.

■ The formula for computing the average weekly wage of a piece-rate worker is established by § 11-9-518(a)(2) set forth above. According to that statute, the average weekly wage is determined by "dividing the earnings of the employee" by the "number of hours required to earn the wages" during the period "not to exceed fifty-two weeks preceding the week in which the accident occurred" multiplied by the "number of hours in a full-time workweek." We note at the outset that there is no statutory provision for disregarding weeks in which "earnings are inordinately low" and these weeks should therefore be included in the calculation.

■ Section 11-9-518(b) provides:

> Overtime earnings are to be added to the regular

weekly wages and shall be computed by dividing the overtime earnings by the number of weeks worked by the employee in the same employment under the contract of hire in force at the time of the accident, not to exceed a period of fifty-two (52) weeks preceding the accident.

According to the above statutes, appellant's average weekly wage is equal to:

$$\left(\frac{\text{employee earnings}}{\text{number of hours}} \times 40\right) + \frac{\text{overtime earnings}}{\text{number of weeks worked}}$$

Applying the statutory formulas to the case before us, we find the calculations made by the law judge and adopted by the Commission, as well as those made by the appellees, to be incorrect. And because of the state of the record, we remand this case to the Commission for recalculation of appellant's average weekly wage with the following guidance:

(1) In determining the average weekly wage, the earnings earned during the week the accident occurred are to be excluded from the calculation;

(2) In determining the average weekly wage, the employee's earnings during the preceding 52 weeks (exclusive of holiday pay, vacation pay, bonus, and overtime earnings) is to be divided by the number of hours (exclusive of any hours in excess of 8 hours in any one day) required to earn the wages;

(3) Because the union contract specifically provides overtime will be paid at one and one-half times the employee's regular rate of pay, overtime earnings are to be calculated by including all earnings received for work performed in excess of 8 hours in any one day; and

(4) In dividing overtime earnings by the number of weeks worked by the employee not to exceed a period of 52 weeks preceding the accident, the number of weeks is to be reduced by those weeks in which the employee did not work.

We therefore affirm in part and remand to the Commission for recalculation of appellant's average weekly wage.

JENNINGS and COOPER, JJ., agree.