1999 OK CIV APP 49

Nancy HIMES, Petitioner/Counter–Respondent,

v.

COUNTRY STYLE HEALTH CARE, INC., Oklahoma Management Group, and the Workers' Compensation Court, Respondents/Counter–Petitioners.

No. 92,173.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 6, 1999.

Michael R. Green, Law Office of Stites & Green, Tulsa, Oklahoma, for Petitioner.

David J.L. Frette, McGivern, Gilliard & Curthoys, Tulsa, Oklahoma, for Respondents.

## OPINION

STUBBLEFIELD, P.J.

¶ 1 The parties appeal from an order of the Workers' Compensation Court three-judge panel, which modified the trial court's order in part and found that claimant sustained compensable injury to both hands and her neck, in addition to the back and left hip injuries found by the trial court, and included mileage reimbursement in computation of claimant's average weekly wage. Based on our review of the record on appeal and applicable law, we sustain the order in part and vacate in part.

¶ 2 Claimant Nancy Himes filed her Form 3 on April 23, 1998, alleging she sustained injury to her neck, arms, hands, back, left hip and legs as a result of an automobile accident she sustained while working as a home health aide for Employer, Country Style Home Health, Inc. The accident occurred on August 17, 1997.

¶ 3 Employer paid Claimant temporary total disability (TTD) compensation. However, on June 1, 1998, Employer filed a motion to terminate Claimant's temporary compensation, asserting: (1) Claimant had been released for light duty work, (2) it had extended such work to Claimant on May 7, 1998, and (3) Claimant had not reported to work.

¶ 4 At a hearing held on July 29, 1998, Claimant requested the trial court to determine that the mileage remuneration that she received should be included within her average weekly wage. Employer stipulated to a base wage rate of $182.67 per week and denied that mileage payments should be included in computation of Claimant's average weekly wage. However, Employer did stipulate that the mileage Claimant received averaged $152.63 per week.

¶ 5 The trial court found that Claimant sustained injury to her back and left hip, with radiculopathy to both legs, arising out of and in the course of her employment. In calculating the rate of TTD and permanent partial disability (PPD) to which Claimant would be entitled, the trial court did include Claimant's "average weekly reimbursement for mileage."[1] The trial court denied the claim for injury to Claimant's hands, stating: "This court does not believe that claimant's carpel [sic] tunnel syndrome was caused or aggravated by the single event trauma occurring on AUGUST 17, 1997." The trial court also determined that on May 7, 1998, Employer offered light duty work to Claimant, and prior to that date, she had been released to return to work under light duty restrictions. Therefore, the trial court terminated

Claimant's TTD benefits effective May 7, 1998.

¶ 6 Both Claimant and Employer appealed to a three-judge panel. Claimant asserted that the trial court's denial of injury to her hands was contrary to law and against the clear weight of the evidence. She further claimed that the trial court erred in terminating TTD because she had refused light duty. According to Claimant, the offer of light duty was made by "Country Style Management Corporation," and she "was never an employee of" that company. In its appeal, Employer claimed that the trial court's inclusion of mileage reimbursement in arriving at Claimant's TTD and PPD rate was contrary to law.

¶ 7 The three-judge panel affirmed the order of the trial court in part and modified it in part. The panel modified the trial court's order by finding that Claimant did sustain an accidental injury to her hands, in addition to the other body parts enumerated in the trial court's order. The panel also recalculated Claimant's compensation rate by adding $106.85 (70% of $152.63) to the stipulated base rate and fixing the compensation rate at $289.52 per week for TTD and $213 per week for PPD. In addition, the panel ordered Employer to provide treatment for Claimant's back, left hip, neck and hands. Finally, the panel ordered that the trial court's order, as modified, should remain in full force and effect. Both Claimant and Employer now seek review in this court.

■ ¶ 8 Claimant's sole proposition of error on appeal is that the panel erred in failing to rule on her request for continuing TTD benefits. Quoting *Frair v. Sirloin Stockade, Inc.*, 1981 OK 117, 635 P.2d 597, she claims that the cause must be remanded to the panel to specifically address the issue of whether she continued to be temporarily totally disabled.[2] We find this proposition to be without merit.

---

1. The trial court in its order erroneously recited that the stipulated amount for mileage, $152.63, was paid to Claimant monthly, rather than weekly, and thus it determined that Claimant's "average weekly reimbursement for mileage" was $35.50. The trial court added $24.85 (70% of

$35.50) to the stipulated base rate of $182.76 to establish a compensation rate of $207.52.

2. Claimant quotes this language: "The Workers' Compensation Court must make specific findings of fact responsive to the issues and conclusions of law when an order is entered granting or

¶ 9 The trial court's order contained the following paragraph:

THAT prior to MAY 7, 1998, claimant was released to return to work under light duty restrictions. On MAY 7, 1998, claimant was offered light duty by the respondent. Therefore, claimant's temporary total disability benefits are terminated effective MAY 7, 1998.

This paragraph was not modified by the panel. Indeed, the panel ordered that it should "remain in full force and effect as the order of this Court." Thus, we find that the panel addressed the issue of continuing TTD and denied the request by affirming the findings of the trial court in that regard.

■ ¶ 10 For its appeal, Employer first claims that the panel had no competent evidence on which to vacate the trial court's finding regarding Claimant's hands. Employer asserts that the opinion offered by Claimant's medical expert—that she sustained carpal tunnel syndrome from grabbing the steering wheel at the time of the accident—was not competent evidence. Its argument in support of this assertion is that the doctor failed to consider the admitted fact that Claimant had prior difficulties with her hands and failed to consider other potential causative sources of Claimant's carpal tunnel syndrome, which caused manifestation of symptoms less than six months prior to the single incident accident. Thus, Employer maintains that the doctor's opinion is not competent "for failure to contain a history consistent with the evidence produced at trial."

¶ 11 However, we note that, when Claimant offered this doctor's opinion into evidence and the trial court inquired if there was any objection, Employer's counsel responded: "Just a general probative value objection, Your Honor." In In re Death of Garland, 1998 OK 72, ¶ 7, 968 P.2d 1214, 1217(footnote omitted), the court stated:

Workers' Compensation Court Rule 23(C), [85 O.S. Supp.1998, ch. 4, app.], and Oklahoma's extant jurisprudence require

denying an award." *Frair,* 1981 OK 117 at ¶ 6, 635 P.2d at 598.

that if in a hearing on a workers' compensation claim a party seeks to disqualify a doctor's narrative report for an inadequate history, a general objection to the probative value will not suffice. The party must specifically identify the objection's basis when the narrative report is first proffered. Otherwise, the Gaines[3] rule mandates that the adduced evidence cannot be challenged on appeal.

The result of Employer's failure to state a specific ground of objection to the doctor's report is that the alleged error is not preserved for appellate review. The report stands properly "admitted as part of the proof in the case." Workers' Compensation Court Rule 23. It is competent evidence supporting the three-judge panel's finding of injury and award of compensation for the carpal tunnel injury.

■ ¶ 12 Employer's second proposition of error has more merit. Employer asserts that the lower court erred as matter of law by finding that mileage reimbursement properly was included in Claimant's average weekly wage computation. Although we disagree that the issue is, totally determinable as a matter of law, for the following reasons, we agree that the lower court's judgment was error.

¶ 13 Claimant's employment agreement recited:

COMPENSATION OF EMPLOYEE. This agreement provides payment for CHHA services delivered at a rate of $5.00 hourly/or $12.00 per visit. Mileage will be paid at a rate of $0.25 per mile that is business related and that meets Medicare conditions for reimbursement.

Title 85 O.S. Supp.1998 § 3(11) defines "wages" as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of injury, including the reasonable value of board, rent, housing, lodging or similar advantage received from the employer."

**3.** *Gaines v. Sun Refinery and Marketing,* 1990 OK 33, 790 P.2d 1073, overruled on other issues by *Davis v. B.F. Goodrich,* 1992 OK 14, 826 P.2d 587.

¶ 14 The parties do not direct us to any Oklahoma case specifically addressing the question of whether a per mile travel expense reimbursement should or may be considered when calculating average weekly wage. However, a leading authority on workers' compensation law has stated:

> In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, as for example, tips, bonuses, commissions and room and board, constituting real economic gain to the employee. A car allowance is includable as wage only if it exceeds actual truck, or travel expenses.

5 Larson's Workers' Compensation Law, § 60.12(a) at 10–655 through 10–660 (1998)(footnote omitted)(emphasis added). Examination of cases cited within this treatise indicates that, generally, courts in other jurisdictions reason that "wages" do not include amounts paid to the employee to reimburse for employment-related expenditures of the type that would not be incurred but for the particular employment. This is because an employee who is given an allowance or reimbursement to cover such expenses suffers no economic loss when she no longer receives the moneys after the employment ceases because she "no longer incurs these extraordinary expenses." *Blake Stevens Constr. v. Henion*, 697 P.2d 230, 232 (Utah 1985). See also *Moorehead v. Industrial Comm'n*, 17 Ariz.App. 96, 495 P.2d 866 (1972); *Bosworth v. 7–Up Distrib. Co. of Fredericksburg, Inc.*, 4 Va.App. 161, 355 S.E.2d 339 (1987). Therefore, courts have required some showing that the payments are more than sufficient to reimburse the employee for employment-related expenses "so that in effect the excess can be considered as extra compensation to the [worker] for his services performed." *Moorehead*, 495 P.2d at 869.

¶ 15 Herein, Claimant testified that she was paid only for actual miles driven, and that it was her belief that Employer was "helping me with my gas." She also testified that the mileage payment was included in her paycheck—she did not receive a separate mileage check. However, there was no evidence admitted which indicated, one way or the other, whether Employer actually treated the mileage as wages by deducting income and social security taxes from the mileage amount paid, or merely paid wages and mileage reimbursement in one check for the sake of convenience.

¶ 16 The record also does not reveal whether Claimant's vehicle expenses were greater or less than the mileage allowance. However, the payment of $0.25 per mile to Claimant for travel obligations of her employment does not seem calculated to give her a financial gain from the use of her vehicle. We note that, in 1997, the Internal Revenue Service rate for business use of an automobile slightly exceeded $0.30 per mile. Rev. Proc. 96–63, 1996–53 I.R.B. 46. Thus, in the applicable time frame, the federal government did not view any mileage reimbursement of $.30 per mile or less as constituting an economic benefit, constituting income, to the recipient.

¶ 17 Claimant argues that the inclusion of mileage payments in calculating her income was correct, because the parties' agreement provides the mileage payments are part of the wages. We must disagree. The first sentence of the agreement—"This agreement provides payment for CHHA services delivered at a rate of $5.00 hourly/or $12.00 per visit,"—deals with compensation for Claimant's work. The provision for mileage—"Mileage will be paid at a rate of $0.25 per mile that is business related and that meets Medicare conditions for reimbursement,"—is a separate provision from that regarding wage compensation and actually uses the term "reimbursement," which indicates a repayment of expenses incurred by Claimant as opposed to the payment of additional wages.

¶ 18 The only evidence that arguably might be advanced as indicating that the mileage payment was an actual "advantage" or "benefit" to Claimant was the fact that Employer included those payments in the one single check by which Claimant was paid her wages. However, that fact is not probative of the issue because, as we have stated, it is an equally logical premise that Employer

made the payment in such a manner for its own convenience.

¶ 19 It was Claimant's burden to prove every element of her claim—including her wage amount for purpose of compensation calculation. See *American Management Sys., Inc. v. Burns,* 1995 OK 58, 903 P.2d 288. However, our review of that proof, in an instance of factual dispute, is limited to an "any competent evidence" determination. *Darco Transp. v. Dulen,* 1996 OK 50, 922 P.2d 591.

¶ 20 Because some mileage payments, where intended to give an economic benefit, might rightfully be included as wages, we have examined the record for any competent evidence that supports the lower court's judgment on this issue. We conclude that Claimant failed to adduce any competent evidence establishing that the mileage reimbursement she received from Employer constituted "wages" under the Workers' Compensation Act. Accordingly, we find that the lower court erred in including the average reimbursement of $152.63 when computing Claimant's average weekly wage.

¶ 21 Accordingly, that portion of the three-judge panel's order computing Claimant's compensation rate is vacated. The remainder of the order is sustained. The cause is remanded to the lower court with instructions to recalculate Claimant's compensation rate excluding mileage reimbursement.

¶ 22 SUSTAINED IN PART, VACATED IN PART AND REMANDED WITH INSTRUCTIONS.

BOUDREAU, V.C.J., and REIF, J., concur.

