2006 OK CIV APP 127

**Floyd CLOPTON, Petitioner,**

v.

**CITY OF MUSKOGEE, Own Risk, and the Workers' Compensation Court, Respondents.**

**No. 102,797.**

Court of Civil Appeals of Oklahoma, Division No. 1.

April 14, 2006.

As Corrected April 26, 2006.

Rehearing Denied May 24, 2006.

Certiorari Denied Oct. 23, 2006.

Susan H. Jones, Tulsa, for Petitioner.

John C. "Jay" Williams, III, Muskogee, for Respondents.

CAROL M. HANSEN, Judge.

¶1 Petitioner, Floyd Clopton (Claimant), seeks review of a Workers' Compensation Court (WCC) order finding, among other things, that Claimant's average weekly wage for computation of temporary total disability (TTD) compensation did not include employer provided benefits such as pension contributions, cash offered in lieu of vacation leave and insurance premiums. We hold such benefits are not properly included in the average weekly wage and sustain the order.

¶2 The trial court found Claimant sustained a compensable injury while employed by Respondent, City of Muskogee (Employer). The trial court further found Claimant had been paid TTD compensation at an incorrect rate for four different periods, and that as a result he had been underpaid in a total amount of $7,711.88. In calculating Claimant's rate of compensation pursuant to 85 O.S.2001 §§ 21 and 22, the trial court used an "average weekly wage" which included "salary", plus amounts Employer paid for "valuable benefits" provided Claimant. These benefits included longevity pay, pension contributions, insurance premiums and cash in lieu of vacation leave.

¶3 In support of its inclusion of "valuable benefits" in Claimant's average weekly wage, the trial court cited and quoted from 85 O.S.2001 § 3(13)(hereafter § 3(13)),[1] which provides:

Wages "means the *money rate* at which the services rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of board, rent, housing, lodging, or *similar advantage received from the employer.*" (Emphasis in trial court's order).

¶4 Employer appealed the trial court's order to a three-judge panel of the WCC. The sole substantive allegation of error in Employer's appeal was—"The trial Court's determination of Claimant's average weekly wage is based upon an erroneous interpretation of 85 O.S., Section 3(13)." Employer also asserted that other paragraphs in the order, which were based on the alleged erroneous interpretation, were "erroneous as a matter of law."

¶5 The three-judge panel ruled in favor of Employer and modified the trial court's order with a recomputed finding of Claimant's average weekly wage and rate of weekly compensation. As recomputed, Claimant's average weekly wage included longevity pay, but not the claimed value of fringe benefits. The modified order deleted those paragraphs which derived from the trial court's interpretation of § 3(13). Because the three-judge panel's finding as to rate of compensation was lower than the trial court's, one of the findings deleted was Claimant's entitlement to an award for "underpayment" of TTD compensation. Claimant seeks our review of the WCC order, as modified.

¶6 When a three-judge panel substituted decision is submitted for our consideration, it must ordinarily be reviewed by applying the traditional any-competent-evidence test of correctness. *Parks v. Norman Municipal Hospital,* 1984 OK 53, 684 P.2d 548. If supported by competent evidence, and not otherwise contrary to law, the panel's findings on non-jurisdictional issues may not be disturbed on review. *Id.*

¶7 The single question on which Claimant seeks review here involves interpretation of § 3(13). Statutory construction presents a pure legal question. *Upton v. State ex rel. Department of Corrections,* 2000 OK 46, 9 P.3d 84. Where questions of law are presented, we exercise *de novo* review. *Ibarra v. Hitch Farms,* 2002 OK 41, 48 P.3d 802. Under this latter standard, the Court has plenary, independent and non-deferential authority to address legal issues. *American Airlines v. Hervey,* 2001 OK 74, 33 P.3d 47.

¶8 Claimant contends here, as he did in the WCC, that "[a]ll of the valuable benefits provided [him] by virtue of his employment should be considered in arriving at his average weekly wage." As posited by Claimant, this question is one of first impression in Oklahoma, even though the definition of

---

1. Renumbered 85 O.S. Supp.2005 § 3(14). Laws 2005, 1st Ex.Sess., c. 1, § 9, eff. July 1, 2005.

"wages" in § 3(13) is essentially the same as originally enacted in 1915.[2]

¶ 9 Our appellate courts have considered the § 3(13) meaning of "wages" in *Mazzio's Corp. v. Dick*, 1999 OK CIV APP 139, 994 P.2d 96, *Himes v. Country Style Health Care, Inc.*, 1999 OK CIV APP 49, 982 P.2d 535, *W.E. Shepherd Son v. Hood*, 1939 OK 381, 185 Okla. 635, 95 P.2d 619, and *H.J. Heinz Co. v. Wood*, 1937 OK 705, 181 Okla. 389, 74 P.2d 353. In the first two cases, the Court of Civil Appeals held as a basic rule that mileage payments to an employee, in amounts which do not exceed actual expenditures, do not constitute wages under § 3(13). The latter two cases held that living expenses, while on employment related travel, were properly included as wages.

¶ 10 None of the foregoing cases is instructive here. In all of the cases, the employee received monetary payments directly. Here, Claimant received fringe benefits, which had some value, not direct payments. Additionally, in the Court of Civil Appeals cases the employee gained no "advantage" from the payments, but was merely reimbursed for on the job vehicle expenses. In the earlier Supreme Court cases, the travel expense for food and lodging were clearly within the definition of wages contained in § 3(13).

■ ¶ 11 While Oklahoma has not determined if fringe benefits should be included in "wages" used to calculate a claimant's average weekly wage, this question has been answered in a number of other jurisdictions. Often cited in those decisions is *Morrison–Knudsen Construction Company v. Director, OWCP*, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983), which reflects the majority view on this issue. *Tabor v. Levi Strauss & Co.*, 33 Ark.App. 71, 801 S.W.2d 311. *See also, Barnett v. Sara Lee Corp.*, 97 Md.App. 140, 627 A.2d 86.[3] The *Morrison–Knudsen* Court was interpreting a District of Columbia workers' compensation statute identical in language to § 3(13). That statute incorporated the provisions of the Federal Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.*

¶ 12 In *Morrison–Knudsen*, the fringe benefits were contributions paid to union trust funds for health and welfare, pensions and training. The Supreme Court held such contributions were not "wages" for the purpose of computing compensation benefits, as that term was used in the statute. The Court found the contributions were not "money ... recompensed", thus the question narrowed to whether they were a "similar advantage" to board, rent, housing or lodging. The Court answered that question negatively.

¶ 13 In *Morrison–Knudsen*, the Supreme Court reasoned that board, rent, housing or lodging are benefits with a present value readily converted into a cash equivalent, while the present value of the trust funds could not be so easily converted. *Tabor v. Levi Strauss*, 801 S.W.2d at 314. While the benefits here were not paid into a trust fund, we perceive no qualitative difference because the *Morrison–Knudsen* Court rejected the argument made there, as it was here, that the value of the benefits could be determined by reference to the employer's cost. The Court reasoned "cost was irrelevant, measuring neither the employee's benefit nor his compensation."

¶ 14 In *Barnett*, 627 A.2d at 90, the Maryland Court of Special Appeals noted the administrative difficulties which would result if evidence of fringe benefits were allowed. We find the Court's quote from the trial judge to be especially informative:

> Every pension plan is different, and the Commission would be required in practically every case to have the testimony of actuaries with regard to vesting, the amounts that would be due and the present values among other factors. This would be totally unacceptable ...

¶ 15 The *Barnett* Court further noted:

> The mere fact of vesting, however, does not eliminate other uncertainties that would result in these cases, such as present value calculations, and the possible disruption of the claims process. Nor are we

---

**2.** Laws 1915, c. 246, art. 1, § 3.

**3.** *Tabor* and *Barnett* interpret statutes defining wages and containing "similar advantage."

persuaded in any event to distinguish between vested and non-vested benefits because neither is the result of specified wages that can be tied to work performance.

¶ 16 Both *Tabor* and *Barnett* cite Professor Larson, one of the most recognized authorities in the field of workers' compensation, for the observation about compensation benefits:

Whether paid voluntarily or in contested and adjudicated cases, they have always begun with a wage base calculation that made "wage" mean the "wages" that the worker lives on and not miscellaneous "values" that may or may not some day have a value to him depending on a number of uncontrollable contingencies.

¶ 17 The Maryland Court of Special Appeals, in *Barnett,* makes an additional observation we deem pertinent to the case before us. The Court stated, "[h]ad it so intended, the Maryland legislature could have specified fringe benefits such as pension contributions within the 'wages' definition." Section 3(13), the subject of the present review, was amended in 1923 to substitute "time of the injury" for "time of the accident", but the Legislature made no substantive change to the definition. Section 3 as a whole has been amended twenty-two times since that time, and the language of § 3(13) was not changed.

¶ 18 As in Maryland, our Legislature has had opportunities to add other "benefits" to those expressly enumerated, but has chosen not to. We believe this evidences the Legislature's intent to restrict the definition of wages to include those "values" which, as noted in *Morrison–Knudsen,* are readily converted into a cash equivalent. The contributions to pension fund, vacation days, and insurance premiums are not readily convertible, making it impractical, if not impracticable, for the WCC to assign a present value.

¶ 19 We are persuaded by the majority view, as reflected in *Morrison–Knudsen, Tabor,* and *Barnett.* If the definition of "wages" for use in calculating a claimant's average weekly wage is to be expanded to include certain "benefits" other than those in § 3(13), or similar to those expressly set forth therein, that is a decision for our Legislature.

¶ 20 The order of the WCC is SUSTAINED.

BELL, P.J., and JOPLIN, J., concur.