Margaret JOHNSON, Appellant,

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee.**

Civ. No. 880009.

Supreme Court of North Dakota.

Aug. 17, 1988.

Joseph F. Larson II (argued), Jamestown, for appellant.

Dean J. Haas, Asst. Atty. Gen. (argued), North Dakota Workers Compensation Bureau, Bismarck, for appellee.

ERICKSTAD, Chief Justice.

This appeal arises from a dispute between the North Dakota Workers Compensation Bureau and claimant Margaret Johnson regarding the amount of reimbursement she is entitled to receive for expenses connected with traveling to and from medical treatment. Johnson appeals from a district court judgment. The Bureau reimburses claimants for travel expenses pursuant to its own "Directive No. 15–C Amended." We conclude the Bureau's directive is ineffective as it relates to Johnson because

the Bureau failed to comply with the rule-making procedure set forth in the North Dakota Administrative Agencies Practice Act (A.A.P.A.).

Johnson was injured while working at the "Bonanza Steakhouse" in Jamestown, North Dakota. The Bureau accepted Johnson's claim and paid disability and certain medical benefits. However, Johnson asserted that she was not fully reimbursed for the expenses of traveling to and from medical and rehabilitation treatment. Johnson requested twenty cents per mile reimbursement for the cost of driving her own vehicle and "per diem allowance for food and lodging at the same rate as state employees...."

The Bureau rejected Johnson's assertion in an administrative order, stating that its "payment of nine cents per mile and actual costs of the meals and lodging is reasonable and is compatible" with section 65–02–08, N.D.C.C. In rejecting Johnson's assertion, the Bureau relied on its "directive," a written policy adopted by the Commissioners of the Bureau which governs the rate of "Travel, Lodging, and Per Diem Expense Reimbursement for Claimants." The Bureau has apparently relied on Directive 15–C since 1966 as a policy for reimbursing claimants for travel expenses associated with traveling to and from medical treatment. As amended in July of 1983, Directive 15–C allows claimants nine cents per mile when, as here, the claimant travels by private automobile. The 1983 and current version also allows a maximum lodging expenditure of $25.00 per night and $17.00 a day for meals. However, no reimbursement "of any kind" is authorized if the distance traveled is less than 50 miles one way.

Johnson made several trips from Jamestown to Fargo (93 miles one way), and Oakes to Fargo (approximately 117 miles one way). She was apparently reimbursed for these trips pursuant to Directive 15–C. Johnson alleges she made 19 trips to Lisbon Hospital for physical therapy. She traveled 41 miles one way on each of these trips. The Bureau refused to reimburse her for these trips as they were less than 50 miles one way.

After the Bureau refused to grant Johnson a hearing to consider the amount of reimbursement, Johnson requested a rehearing asserting the Bureau's reimbursement policy was "arbitrary" and "unreasonable." The Bureau denied Johnson's request for a rehearing, noting that the Bureau is not required by statute to reimburse claimants for travel expenses. The Bureau noted that "[t]he facts in dispute in this matter are legislative about policy. Therefore, the Bureau is not required under law to hold a formal hearing in this matter." The Bureau also denied payment of Johnson's attorney's fees on the ground that Johnson's claim was frivolous.

Johnson appealed the Bureau's decision to district court, reasserting that the Bureau's practice of reimbursing claimants for travel expenses is "arbitrary, unreasonable, and capricious, is not in accordance with The North Dakota and United States Constitutions and is not in accordance with North Dakota law and statute, particularly the Administrative Agencies Practice Act, N.D.C.C. Chapter 28–32." Johnson also reasserted her right to a hearing.

The district court apparently concluded that the Bureau pays travel expenses pursuant to its own rule; that the rule the Bureau relies on is invalid because it has not been adopted pursuant to the North Dakota A.A.P.A. (Ch. 28–32, N.D.C.C.), and therefore the Bureau must adopt a reimbursement of travel expenses rule for claimants pursuant to the A.A.P.A. The district court explained that Directive 15–C is:

"[I]nvalid under Chapter 28–32 NDCC, and will continue to be so until the Attorney General makes a ruling as to its legality. Thus, this Court declines to make a ruling on [Johnson's] contentions until such time as an Attorney General's opinion has been issued.

"The [Bureau] is hereby ordered to comply with Sec. 28–32–02 NDCC, and once an opinion has been issued, this Court will consider the appeal on its merits."

This course of action was confirmed in the court's November 4, 1987, "CONCLUSIONS OF LAW," which reads in part:

"II.

"Bureau Directive No. 15–C is an administrative rule and subject to the Administrative Agencies Practice Act, N.D.C.C. Chapter 28–32.

"III.

"N.D.C.C. § 28–32–02 requires Bureau Directive No. 15–C to be reviewed by the Attorney General as to its legality.

"IV.

"The Bureau must obtain an Attorney General's opinion as to the legality of Directi[ve] No. 15–C, in order for the Court to consider this appeal on its merits."

In a judgment based on the above order the district court held that the Bureau could not set the rates at which claimants were to be reimbursed for their travel expenses without first promulgating a rule pursuant to the A.A.P.A. Despite the fact that the district court partially ruled in Johnson's favor, Johnson appealed from the judgment of the district court to this Court raising four basic contentions.

I

Bureau Directive 15–C is invalid because it was not enacted pursuant to the A.A.P.A. and, even if Directive 15–C were valid under the A.A.P.A., it would remain in violation of section 65–05–07, N.D.C.C.

II

The Bureau deprived Johnson of her state and federal constitutional rights to due process of law by refusing to grant Johnson a hearing to determine the amount of money she should be reimbursed for travel expenses.

III

The Bureau deprived Johnson of her state and federal constitutional rights to equal protection of the laws because the Bureau pays its employees more for travel expenses than it pays claimants.

IV

The Bureau must pay interest on attorney's fees due when the Bureau fails to pay attorney's fees in a "timely" manner.

Because of our disposition of Johnson's first contention, we find it unnecessary at this juncture to address Johnson's two constitutional attacks on Directive 15–C. Johnson's first contention rests in part on the assumption that section 65–05–07, N.D.C.C., requires the Bureau to reimburse claimants for travel expenses.[1] Section 65–05–07, N.D.C.C., reads in pertinent part:

---

1. Johnson contends the Bureau concedes that § 65–05–07, N.D.C.C., requires the Bureau to pay travel expenses. However, in its appellate brief to the district court and this Court the Bureau does not so concede. Rather, the Bureau contends payment of travel expenses is authorized but not mandated by statute. Although the Bureau's position on this issue was explored during oral argument, it is not clear from the colloquy between counsel and members of this Court that the Bureau concedes that it is *required* to pay travel expenses. As the appellate briefs of the Bureau do not support Johnson's contention, we decline to attribute such a concession to the Bureau.

Subsequent to oral arguments before this Court, the Bureau amended its rule concerning payment of travel expenses in conjunction with medical services. Effective August 1, 1988, N.D. Admin.Code § 92–01–02–12 provides:

"*Mileage and per diem for travel to and from medical treatment.* The North Dakota workers compensation bureau recognizes payment for travel to and from medical treatment as an implied benefit of reasonable and necessary medical expenses, pursuant to the terms of North Dakota Century Code section 65–05–07.

"The North Dakota workers compensation bureau shall pay mileage for travel to and from medical treatment at the rate set by the legislative assembly for state employees, as provided in North Dakota Century Code section 54–06–09. Mileage must be measured from city limit to city limit. In order to foster efficiency and to administer the provisions of this rule, no payment for mileage may be paid when the distance traveled is less than fifty miles [80.47 kilometers] one way, unless the total mileage equals or exceeds two hundred miles [321.87 kilometers] in a calendar month.

"The North Dakota workers compensation bureau shall pay the costs of necessary lodg-

*"65–05–07. Injured employee given medical and hospital service required— Furnished artificial limbs and appliances for rehabilitation.* Immediately after an injury sustained by an employee and during the resulting period of disability, the fund *shall furnish to the employee such medical, surgical, and hospital service and supplies* as the nature of the injury may require." [Emphasis added.]

The express language of section 65–05–07, N.D.C.C., requires the Bureau to provide "medical, surgical, and hospital service and supplies...." Johnson argues, however, that travel expenses go "hand-in-hand with medical care" and that "transportation and the [medical] treatment are inseparable parts of medical care. Thus, travel expenses ought to be considered a part of providing medical care."

Johnson contends not only that travel expenses "ought to be" implied from a statute which provides for "medical, surgical, and hospital service ..." but additionally that the Bureau's reimbursement be "reasonable." Johnson suggests that the reimbursement rates for state employees found in sections 54–06–09 and 44–08–04, N.D.C.C., may be reasonable. Those two sections allow state employees to receive twenty cents per mile for driving a private vehicle, plus a maximum of seventeen dollars per day for meals and thirty-five dollars per day for lodging.[2]

The principal defect of Johnson's argument is that, if adopted, it would require this Court to usurp the function of the legislative branch of government. We decline to formulate a "reasonable" rate of reimbursement or direct the Bureau to formulate a "reasonable" rate in the absence of a statute which expressly directs this Court or the Bureau to do so.

The district court's order and judgment did not address the threshold issue of whether or not the Bureau is required to pay travel expenses by statute. The Bureau concedes that travel expenses may be implied from section 65–05–07, N.D.C.C., but it apparently contends the statute does not require payment of travel expenses and thus the Bureau may pay travel expenses at its discretion. Because the Bureau currently does pay travel expenses, it is not necessary for the Court at this time to consider the issue of whether or not they are statutorily required to do so. *See Farmers State Bank of Leeds v. Thompson*, 372 N.W.2d 862 (N.D. 1985) (the court need not consider issues unnecessary to its decision); *St. Onge v. Elkin*, 376 N.W.2d 41 (N.D. 1985) (the court will not address a question which is moot or which requires an advisory opinion).

We are aware that other jurisdictions have decided that travel expenses are an implied part of medical services. *See e.g., Hite v. Evart Products Co.*, 34 Mich.App. 247, 191 N.W.2d 136, 141 (1971) (absent showing state's travel regulation allowing state employees nine cents was unreasonable, workers compensation claimant traveling 18 miles from her home was entitled to same mileage allowance); *Pavel v. Hughes Brothers, Inc.*, 167 Neb. 727, 94 N.W.2d 492, 499 (1959) ("reasonable" medical and hospital services includes the cost of travel incident to obtaining such services); *Gonzales v. Bates Lumber Co.*, 96 N.M. 422, 631 P.2d 328, 330 (Ct.App.1981) (statute requiring employer to provide "reasonable" medical services impliedly includes travel expenses incident to medical treatment); *Ney v. State Workmen's Compensation Commissioner*, 297 S.E.2d 212, 215 (W.Va.1982) ("Although the language of the statute does not expressly provide for reimbursement for travel expenses incurred in connection with obtaining medical

---

ing and per diem when the claimant must be away from home as a result of necessary medical treatment at the rate set by the legislative assembly for state employees, as provided in North Dakota Century Code section 44–08–04, except that out-of-state lodging may not exceed one hundred twenty-five percent of the allowance for in-state lodging. However, the

bureau may pay no more than actual cost of meals and lodging, with receipt required."

**2.** For out-of-state travel, state employees are entitled to a maximum of thirty dollars for meal expenses. State employees may receive actual out-of-state lodging expenses. *See* § 44–08–04, N.D.C.C.

treatment, we have no difficulty in construing it to authorize payment for those expenses."). Although we do not need to decide whether or not the Bureau is statutorily required to pay travel expenses, as it is doing so the issue becomes whether or not it is doing so after having followed appropriate procedure.

█ Johnson argues that the Bureau Directive 15–C is invalid because it was not promulgated pursuant to the A.A.P.A. Section 28–32–03, N.D.C.C., states that "rules" not published in the Administrative Code shall be invalid. Johnson asserts Directive 15–C is a rule within the A.A.P.A. and must therefore be published in the Administrative Code. A rule is defined at section 28–32–01(6), N.D.C.C., which reads:

> "6. 'Rule' means the whole or a part of an agency statement of general applicability that implements, interprets, or prescribes law or policy, or the organization, procedure, or practice requirements of the agency. The term includes the amendment, repeal, or suspension of an existing rule. The term does not include:
>
> *   *   *   *   *   *
>
> "g. A form whose contents or substantive requirements are prescribed by rule or statute or are instructions for the execution or use of the form."

The district court concluded that the Bureau's present rule was not an excepted rule pursuant to section 28–32–01(6)(g), N.D.C.C. The Bureau contends on appeal that Directive 15–C is authorized by section 65–02–08, N.D.C.C., which reads in pertinent part:

> "*65–02–08. Rulemaking power of the bureau—Fees prescribed by bureau.* The bureau shall make, promulgate, and enforce such rules, not inconsistent with the provisions of this title, as may be necessary to carry out the provisions of

this title. *All fees on claims for legal, medical, and hospital services rendered under this title to any claimant must be in accordance with schedules of fees adopted or to be adopted by the bureau...*.." [Emphasis added.]

The Bureau argues that it pays travel expenses voluntarily without statutory command and that section 65–02–08, N.D.C.C., gives the Bureau authority to adopt "schedules of fees" for medical and legal services without proceeding under the A.A.P.A. The second sentence of section 65–02–08, N.D.C.C., specifically grants the Bureau the authority to adopt "schedules of fees."

The Bureau argues that the emphasized language in section 65–02–08, N.D.C.C., (above) would be rendered *"idle and nugatory if the Bureau is required to promulgate its fee schedules as administrative rules."* The Bureau also cites us to section 1–02–07, N.D.C.C.,[3] in support of its position that the emphasized language in section 65–02–08, N.D.C.C., exempts the Bureau from adopting a rule pursuant to the A.A.P.A. Section 1–02–07 expresses a preference for a "special provision" of the Century Code over a "general provision" of the Century Code when the two provisions are "irreconcilable." However, section 1–02–07 first requires the general and special provision to be harmonized if possible.

We find nothing in the language of section 65–02–08, N.D.C.C., that is irreconcilable with the Bureau's duty to promulgate rules pursuant to the A.A.P.A. Section 65–02–08 does not prescribe the manner in which the Bureau may adopt its "rules" and "schedules of fees"; it merely confers upon the Bureau authority to do so. The A.A.P.A., on the other hand, does prescribe the procedure the Bureau must follow to adopt a valid rule. Accordingly, we conclude if the Bureau reimburses claimants for travel expenses, it must do so pursuant

---

3. Section 1–02–07, N.D.C.C., reads:

"*Particular controls general.* Whenever a general provision in a statute is in conflict with a special provision in the same or in another statute, the two must be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special provision must prevail and must be construed as an exception to the general provision, unless the general provision is enacted later and it is the manifest legislative intent that such general provision shall prevail."

to the Administrative Agencies Practice Act.

In its order and judgment the district court may have ruled that Directive 15–C would comply with A.A.P.A. "once an [attorney general's] opinion has been issued" upholding Directive 15–C. If so, the district court was mistaken.

Section 28–32–02, N.D.C.C., reads in pertinent part:

"Prior to the adoption, amendment, or repeal of any rule, the agency shall adopt a procedure whereby all interested persons are afforded reasonable opportunity to submit data, views, or arguments, orally or in writing. In case of substantive rules, opportunity for oral hearing must be granted if requested. The agency shall consider fully all written and oral submissions respecting the proposed rule."

■ We believe it is clear that Directive 15–C is a "substantive" rule within the meaning of section 28–32–02, N.D.C.C. Thus, before such a rule may be adopted in the first instance, upon request, Johnson or any other interested person may request and must receive an oral hearing to present data regarding the cost of traveling to and from medical treatment.[4]

■ Johnson also contends that the Bureau must "pay interest on bills for legal services which were not timely paid as provided by Chapter 13–01.1."[5] The Bureau declined to pay Johnson's attorney's fees because it determined that Johnson's assertions were "frivolous." The district court concluded, however, that Johnson's assertions regarding mileage reimbursement were not frivolous and the Bureau thereafter paid attorney's fees. We agree with the district court that Johnson's assertions are not frivolous as they relate to the necessity of the Bureau to follow the Administrative Agencies Practice Act. We do not agree with Johnson that Chapter 13–01.1 compels the Bureau to pay interest on attorneys' fees.

On its face, Chapter 13–01.1 makes no reference to payment for legal services. Section 13–01.1–01, N.D.C.C., provides in relevant part:

"Every state agency ... which acquires property or services pursuant to a contract with a business shall pay for each complete delivered item ... on the date required by contract ... or, if no date for payment is specified by contract, within forty-five days after receipt of the invoice covering the delivered items or services."

The term "business," however, may imply an ambiguity. In order to determine the construction the Legislature put on this term, we look to the legislative history.

The Committee reports concerning Chapter 13–01.1 indicate the legislation is intended to stimulate governmental entities to make prompt payment to the small retail businesses which provide them goods and

---

4. During oral argument counsel for the Bureau indicated it is in the process of sending notice to interested persons and conducting a hearing pursuant to § 28–32–02, N.D.C.C. Part of the legislative history of the hearing required in § 28–32–02, N.D.C.C., is found in the Interim Report of the North Dakota Legislative Council for the Forty-Fifth Legislative Assembly. A committee consisting of legislators and citizens studied North Dakota administrative law. The committee of Judiciary "C" recommended the amendment of § 28–32–02, N.D.C.C., to "require each agency to adopt a procedure whereby all interested persons are afforded reasonable opportunity to submit data, views, or arguments, orally or in writing, prior to the adoption, amendment, or repeal of any rule. The committee recommends that opportunity for an oral hearing should be required if requested by 25 persons, by governmental subdivision or agency, by the Legislative Council or an interim committee of the Legislative Council, or by an association having not less than 25 members." Report of the North Dakota Legislative Council, Forty-Fifth Legislative Assembly, at 148 (1977). The oral hearing was provided for without the prerequisites but merely upon request.

5. Section 13–01.1–02, N.D.C.C., reads:
"13–01.1–02. *When interest payment required.* Interest shall accrue and be made on payments overdue under section 13–01.1–01 at the rate of one and three-fourths percent per month, unless a different rate is specified within the contract upon which the claim is based. Interest shall accrue beginning on the day after payment is due, if payment due date is specified by contract, or on the day of receipt of the invoice covering the delivered goods or services, if payment is not made within forty-five days. Interest ceases to accrue on the date payment is made."

services.[6] We decline to broaden the Legislature's interpretation of "business" as used in Chapter 13–01.1 to include legal services rendered to Worker's Compensation claimants. We therefore conclude that Chapter 13–01.1, N.D.C.C., does not compel the Bureau to pay interest on attorneys' fees.

█ Further, no provision in Title 65 authorizes the Bureau to pay interest on attorney's fees. As referenced in part I of this opinion, section 65–02–08, N.D.C.C., requires that all legal fees must be paid in accordance with the schedule of fees adopted by the Bureau. Moreover, the attorney's fees shall "constitute the entire remuneration for the claimant's attorney for all services before the Bureau." *Id.* We believe this provision prevents the claimant's attorney from seeking fees from the claimant and from otherwise seeking more than what is provided in the Bureau's schedule of fees. Accordingly, Johnson is not entitled to interest on attorney's fees.

We conclude that because the Bureau reimburses for travel expenses, Johnson is entitled to reimbursement of travel expenses pursuant to a Bureau rule duly promulgated pursuant to the North Dakota Administrative Agencies Practice Act.

The judgment of the district court is affirmed to the extent we have indicated and it is reversed to the extent we have indicated. The case is remanded to the Bureau so that it may fully comply with the A.A.P.A. and more particularly section 28–32–02, N.D.C.C., as it relates to the adoption of a rule providing for travel expense reimbursement in conjunction with medical care and treatment. Johnson is entitled to statutory costs on appeal.

GIERKE, VANDE WALLE and LEVINE, JJ., concur.

MESCHKE, Justice, concurring.

With the understanding that the majority opinion directs that "Johnson is entitled to reimbursement of travel expenses pursuant to a Bureau rule duly promulgated," I concur.

NDCC 13–01.1–01 requires "every state agency" to pay for "services pursuant to a contract with a business ... within forty-five days after receipt of the invoice covering the ... services." No reply brief was filed to respond to the Bureau's argument that "[a]ttorneys fees are paid by legislative mandate, not by virtue of the Bureau having contracted for legal services." While I do not agree that the "entire remuneration" language of NDCC 65–02–08 bears on the effect of a later, specific statute, I am content to concur in the result denying interest in this case. We can address the effect of Ch. 13–01.1 on an agency's obligations in an adequately briefed appeal.

---

**6.** 1985 Senate State and Federal Government Committee Minutes (March 5, 1985). Senator Lips stated:

"The objective of the legislation is to make certain those businesses providing goods and services to government receive payment in a reasonable period of time and to also encourage government agencies to maintain efficient financial management practices. The legislation is aimed at making governmental entities operate in the same manner and with the same ground rules that the private sector operates on on a day to day basis. This legislation clarifies that state government and political subdivisions are subject to payment of interest on past due accounts.

"With depressed economy, such as we are presently experiencing, many small businesses in particular, have a difficult time maintaining adequate cash flow. This is a problem that should not be compounded by the failure of government to pay its bills in a timely manner. This legislation is intended to stimulate prompt payment and thus help those North Dakota businesses who are not receiving timely payment for the goods and services provided to governmental entities within the state."

Myron Nelson, representing the Greater North Dakota Association stated:

"This bill originated from our small business council of the GNDA. The GNDA got involved with this primarily because of a result of a survey of small businesses taken over the state last fall. What we found is that there is a definite concern with the small businesses as they have to wait for the money being received while they are providing the services."