2002 ND 65

**OLANDER CONTRACTING CO.,**
Plaintiff, Appellee and
Cross–Appellant,

v.

**GAIL WACHTER INVESTMENTS,**
Defendant, Appellee and
Cross–Appellant,

**Dakota Sand and Gravel,**
**Inc., Defendant,**

and

**The City of Bismarck, North Dakota,**
Defendant, Appellant and Cross–
Appellee.

No. 20010086.

Supreme Court of North Dakota.

April 16, 2002.

Rehearing Denied May 14, 2002.

Marvin T. Fabyanske (argued), Fabyanske, Westra & Hart, Minneapolis, and David J. Hogue (appeared), Pringle & Herigstad, P.C., Minot, for plaintiff, appellee, and cross-appellant.

Clark J. Bormann (argued) and Paul H. Myerchin (on brief), Bormann Law Office, Bismarck, for defendant, appellee, and cross-appellant.

Randall J. Bakke (argued) and Michael J. Hagburg (on brief), Smith Bakke Hovland & Oppegard, Bismarck, for defendant, appellant, and cross-appellee.

SANDSTROM, Justice.

[¶ 1] The City of Bismarck ("Bismarck") appealed a judgment and orders entered in an action brought by Olander

Contracting Co. ("Olander") against Bismarck, Gail Wachter d/b/a Gail Wachter Investments ("Wachter"), and Dakota Sand and Gravel, Inc.[1] Wachter and Olander cross-appealed. We affirm.

[¶ 2] In 1997, Olander, Wachter, and Bismarck entered into a water and sewer construction contract including, among other things, connecting a ten-inch sewer line from Wachter's housing development to Bismarck's existing 36–inch concrete sewer main and installing a manhole at the connection, to be paid for by Wachter. Olander installed the manhole, but it collapsed within a few days. Olander installed a second manhole, with a larger base supported by pilings, but it failed a few days after it was installed. Olander then placed a rock bedding under the sewer main, replaced 78 feet of the existing concrete pipe with PVC pipe, and installed a manhole a third time on a larger base.

[¶ 3] Olander sued Wachter and Bismarck for damages of $456,536.25 for extra work it claims it was required to perform to complete its contract. Wachter answered, counterclaimed against Olander, and cross-claimed against Bismarck. Bismarck answered, counterclaimed against Olander, cross-claimed against Wachter, and demanded a jury trial on all issues.

[¶ 4] The jury returned a special verdict finding Olander performed "extra work/unforeseen work ... for which it is entitled to be compensated in excess of the contract price" in the amount of $220,849.67, to be paid by Bismarck; Wachter was not required to pay Olander any of the $6,600 it had withheld for delay in completing the project; neither Olander nor Wachter breached its contract with Bismarck; and Olander should be paid interest on its damages. The trial court

denied Bismarck's post-trial motion for judgment as a matter of law or a new trial. Judgment was entered in favor of Olander against Bismarck for $275,462, which included $220,850 on the jury verdict, prejudgment interest of $44,544 from November 11, 1997, and costs of $10,068. The judgment dismissed Olander's claims against Wachter, Bismarck's claims against Wachter, and Wachter's claims against Bismarck. Bismarck appealed, and Olander and Wachter cross-appealed.

[¶ 5] On appeal, Bismarck contends Olander's claims against it should be dismissed because Bismarck owed Olander no duty under the contract and Olander failed to satisfy its burden of proof, and contends it should be granted a new trial because the court erred in dismissing Bismarck's negligence claims, the court erred in conducting the trial, and the verdict was inconsistent with the evidence.

[¶ 6] On cross-appeal, Olander contends the trial court erred in dismissing its argument that under *United States v. Spearin*, 248 U.S. 132, 54 Ct.Cl. 187, 39 S.Ct. 59, 63 L.Ed. 166 (1918), the contract included implied warranties of fitness and suitability of the plans and specifications furnished by Bismarck, and the court erred in interpreting and applying this State's prompt payment statute in N.D.C.C. ch. 13–01.1.

[¶ 7] On cross-appeal, Wachter contends there was no reversible error below. Alternatively, Wachter contends that (1) the trial court erred in dismissing Wachter's cross-claim against Bismarck, (2) Olander had a duty to insure and indemnify Wachter, and (3) Wachter had no duty to pay for extra work.

---

1. Dakota Sand and Gravel, Inc., was dismissed from the action by an order issued

October 24, 2000.

[¶ 8] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeals were timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

I

A

[¶ 9] Bismarck contends it should have been granted summary judgment. Summary judgment is a procedural device for speedy disposition of a controversy without a trial if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not change the result, and either party is entitled to judgment as a matter of law. *Jaskoviak v. Gruver*, 2002 ND 1, ¶ 11, 638 N.W.2d 1. On appeal, we review the evidence in the light most favorable to the party opposing a motion for summary judgment, giving that party the benefit of all favorable inferences that reasonably can be drawn from the evidence. *Id.* If a case goes to trial after a motion for summary judgment is denied, the question of whether the trial court erred in denying summary judgment is moot; the appropriate question on appeal is whether the trial court erred in denying the movant's subsequent motion for judgment as a matter of law. *Berg v. Dakota Boys Ranch Ass'n*, 2001 ND 122, ¶¶ 10–11, 629 N.W.2d 563.

1

[¶ 10] Bismarck contends it should have been granted summary judgment of dismissal, arguing (a) the trial court erred in refusing to interpret the contract and in "pass[ing] the task of interpreting the contract to the jury"; (b) Bismarck had no duty to pay for Olander's work, because the contract placed responsibility for pay-

ment for all work on Wachter, and Wachter paid for extra work before the manhole failures; (c) the contract required Olander "to complete the work on time and in accordance with project specifications" and "[n]o language in the contract allowed extra payments to Olander for mere completion of the contract work"; and (d) the contract made Olander responsible for job delays and costs associated with job delays.

[¶ 11] We recently addressed the construction of written agreements:

If the intent of the parties can be ascertained from the agreement alone, interpretation of the contract is a question of law. Thus, an unambiguous contract is particularly amenable to summary judgment. However, if the terms of the contract are ambiguous, extrinsic evidence regarding the parties' intent may be considered, and the terms of the contract and parties' intent become questions of fact. When two good arguments can be made for either of two contrary positions as to the meaning of a term in a document, an ambiguity exists.

*Garofalo v. Saint Joseph's Hosp.*, 2000 ND 149, ¶ 7, 615 N.W.2d 160 (citations omitted). "Whether or not a contract is ambiguous is a question of law." *Des Lacs Valley Land Corp. v. Herzig*, 2001 ND 17, ¶ 9, 621 N.W.2d 860. "A determination of ambiguity is but the starting point in the search for the parties' ambiguously expressed intentions, which are questions of fact to be determined with the aid of extrinsic evidence." *Bohn v. Johnson*, 371 N.W.2d 781, 788 (N.D.1985).

[¶ 12] Section (6) of the contract provides, in part:

The DEVELOPER [Wachter] will be responsible to pay the CONTRACTOR [Olander] for all of the contract work in accord with the plans, specifications, and

proposal prepared by the DEVELOP-ER's Representative made a part of this contract.

Section (9) of the contract provides, in part:

The CONTRACTOR shall guarantee all work against faulty materials and workmanship for a period of one year from the date of final payment.

Section (13) of the contract provides:

The Board of City Commissioners reserves the right to make any necessary changes in the alignment, grade, or design of the proposed work deemed by them advisable.

Section 108 of the General Provisions incorporated in the contract provides:

LOCAL CONDITIONS. Bidders shall satisfy themselves as to the nature of the material to be handled and the local conditions affecting the work and if conditions are found to be different than anticipated by the Contractor subsequent to the signing of the contract, it shall not in any way relieve the Contractor from his obligation or any risks from the fulfillment of all the work and terms of his contract.

Section 109 of the General Provisions required Olander to use such "methods and appliances ... as will enable him to secure a satisfactory quality of work ... within the time specified." Section 110 of the General Provisions says Olander "will not be entitled to any compensation for causes resulting in delays or hindrances to the work." Section 120 of the General Provisions provides:

CONTRACTOR'S RESPONSIBILITIES. Unless otherwise specified, the Contractor shall furnish all labor, materials and equipment necessary for the completion of the Schedule of Work in accordance with the plans and specifications. The Contractor shall do all necessary hauling and perform all labor, incidental thereto, for which no express provisions have been made. The Contractor shall assume all risks or damages to persons or property prior to the final acceptance of the work. The Contractor shall so conduct his operation as not to interfere with the work of other contractors in the vicinity. The Contractor shall maintain at all times an efficiently sized crew headed by a comp[ ]etent construction foreman and the necessary skilled labor to efficiently complete the work.

Section 126 of the General Provisions provides, in part:

EXTRA WORK. The Contractor shall perform unfor[e]seen work, for which there is no price included in the contract, whenever it is deemed necessary or desirable in order to complete fully the work as contemplated. Such work shall be performed in accordance with the specifications and as directed.

When work not shown on the plans is to be performed by the Contractor the Engineer may order the work done on a force account basis when the measurement and pavement [sic] by unit prices becomes too cumbersome to be practicable, or when it is considered to be to the best interest of the City of Bismarck. Extra work will be paid for at the unit prices or lump sum stipulated in the order authorizing the work or the City of Bismarck may require the Contractor to do such work on a force account basis, to be compensated in the following manner.

The General Conditions in the specifications and proposal incorporated in the contract provide, among other things: "The Contractor shall ascertain the existence of conditions affecting the cost of the Work which would have been disclosed by reasonable examination of the site."

[¶ 13] The contract requires Olander to "perform unfor[e]seen work, for which there is no price included in the contract, whenever it is deemed necessary or desirable in order to complete fully the work" and provides that "[e]xtra work will be paid for." The contract does not define unforeseen work or extra work, and does not specify which party is required to pay for such work. The parties have presented plausible arguments for contrary positions. The contract is, therefore, ambiguous, and there were genuine issues of material fact precluding summary judgment. We conclude the trial court properly received extrinsic evidence of the parties' ambiguously expressed intentions and properly submitted to the jury the factual questions of whether or not Olander performed extra work for which it was entitled to be paid and, if so, which party or parties were required to pay for it.

2

[¶ 14] Bismarck ˙ contends it should have been granted summary judgment because the contract, in Section 130 of the General Provisions and Section (11) of the agreement, requires Olander to indemnify Bismarck and to name Bismarck as an additional insured. Section 130 of the General Provisions provides:

*INDEMNITY AGREEMENT FOR CONTRACTORS:* The Contractor agrees to indemnify and save harmless City of Bismarck, its appointed and elective officers and employees, from and against all loss or expense, including attorney's fees and costs by reason of liability imposed by law upon the City, its elected or appointed officials or employees for damages because of bodily injury including death at any time resulting therefrom sustained by any person or persons and on account of damage to property including loss of use

thereof, arising out of or in consequence of the performance of this work, whether such injuries to persons or damage to property is due to the negligence of the Contractor, his agents or employees, his sub-contractors, their employees, City of Bismarck, its appointed or elected officers, employees, or their agents, except only such injury or damage as shall have been occasioned by the sole negligence of the City, its appointed or elected officials or employees.

Section (11) of the agreement provides:

The CONTRACTOR shall provide and maintain all necessary watchmen, barricades, lights, and warning signs and take all necessary precautions for pro- ˙tection of the public, and shall further maintain at all times adequate protection of the work from damage. The CONTRACTOR shall also take out and furnish liability insurance to protect itself and the CITY with an insurer licensed to do business in North Dakota, in the sum of $1,000,000 for property damage, and $1,000,000 for bodily injury for one person and $1,000,000 for one accident, against and from all suits, actions, or claims of any character, name and description brought for or on account of any injuries or damages received or sustained by any person or persons or property on account of any negligent act of fault of the DEVELOPER, its CONTRACTOR, or officers, agents or employees in the execution of the contract, or on account of its failure to provide necessary barricades, warning lights, or signs, and as will protect the CITY from any contingent liability under this contract. In no case shall the liability insurance be less than that specified in Section 133 of the City of Bismarck Construction Specifications for Municipal Improvements.

[¶ 15] "Indemnification is a remedy which allows a party to recover reimbursement from another for the discharge of a liability which, as between them, should have been discharged by the other." *Mann v. Zabolotny*, 2000 ND 160, ¶ 7, 615 N.W.2d 526. Relying on *St. Paul Fire & Marine Ins. Co. v. Amerada Hess Corp.*, 275 N.W.2d 304 (N.D.1979), the trial court ruled "as a matter of law that a 'reasonable interpretation' of the provisions cited is that any indemnity requirement goes to the defense and payment of claims by non-party claimants." In that case, St. Paul Fire and Marine Insurance Company, as subrogee of KBM Well Service, Inc. ("KBM"), sought to recover from Amerada Hess Corporation for damage to a KBM well service derrick while the derrick was at an Amerada well. The well service contract between Amerada and KBM contained the following waiver provision:

"Amerada shall never be liable for any loss of or damage to any such machinery, equipment or tools furnished by.... [KBM Well Service], other than uninsured tools lost or damaged down a well hole."

*Id.* at 306. The contract also had the following indemnity and insurance provision:

"[KBM Well Service] shall protect and defend Amerada against and indemnify and save it harmless from all liability, claims, demands and causes of action arising out of the execution and performance of work under this agreement. This indemnity agreement by ... [KBM Well Service] shall be insured by ... [KBM Well Service] with insurers and in amounts satisfactory to Amerada...."

*Id.* at 308. This Court addressed those contract provisions:

Amerada contends that this indemnity provision, along with the waiver, is a promise by KBM to hold Amerada harmless from any liability under the contract. The term "save harmless" has been defined as a "guaranty" or promise to "indemnify." *See Bausman v. Credit Guarantee Co.*, 47 Minn. 377, 379, 50 N.W. 496 (1891). A reasonable interpretation of the "save harmless" provision contained in paragraph 7 is that KBM agrees to "protect" and "defend" Amerada from claims of third parties. The save-harmless provision does not shield Amerada from contract claims of KBM but, instead, assures to Amerada that KBM will defend Amerada from third-party claims. The requirement that KBM obtain property insurance in amounts satisfactory to Amerada provides further assurance to Amerada of indemnity from KBM in the event an action is brought against Amerada for the negligent acts of either or both Amerada and KBM.

*Amerada*, at 308.

[¶ 16] Bismarck contends the contract's "Section 130 provision was more specific than the *Amerada* provision and *specified* it applied to injuries sustained by 'any person or persons,' not just injuries sustained by third persons" and "the plain language of the Section 130 indemnity provision required Olander to indemnify Bismarck for damages related to the project." From our review of Section 130 in this contract and the comparable provision in *Amerada*, we conclude Section 130 is not more specific or protective than the *Amerada* provision and Section 130's use of "any person or persons" does not evince an intention to protect Bismarck from the contract claims of other parties to the contract. We conclude a reasonable interpretation of Section 130 is that Olander agreed to indemnify and save Bismarck harmless from the claims of third parties and it does not shield Bismarck from the

contract claims of Olander. *See Amerada*, 275 N.W.2d at 308.

[¶ 17] The insurance provision in Section (11) of the contract adds nothing to Bismarck's position, because it merely provides further assurance to Bismarck of indemnity from Olander for third-party claims. *See Amerada*, 275 N.W.2d at 308.

[¶ 18] We conclude the trial court did not err in denying Bismarck's pretrial motion for summary judgment or its motion for judgment as a matter of law.

## B

[¶ 19] Bismarck contends Olander's claims against Bismarck should be dismissed because Olander failed to satisfy its burden of proof.

[¶ 20] Bismarck argues Olander failed to prove it performed compensable extra work under the contract. We have already determined the contract was ambiguous and the trial court properly submitted to the jury the factual question of whether or not Olander performed extra work for which it was entitled to be paid. The jury found Olander performed extra work for which it was entitled to be paid, and there is evidence to support the jury's finding.

[¶ 21] Bismarck argues Olander failed to prove it fulfilled Section 126 requirements for payment for extra work by not getting written agreements about labor rates and equipment, by not meeting daily with Bismarck's engineer, and by not providing detailed statements relating to extra work within ten days of completion, and, therefore, "Olander's claims should not have gone to the jury." However, Bismarck has not shown that it complied with the contract terms required to trigger those requirements for Olander.

[¶ 22] Bismarck argues Olander failed to prove it had an enforceable agreement with Bismarck for payment for extra work, asserting "there is no language in the contract between the parties requiring Bismarck to pay anything for the work on this project." We have already determined the contract was ambiguous, and the trial court properly received extrinsic evidence about the parties' ambiguously expressed intentions and properly submitted to the jury the factual issues about extra work and which parties were to pay for it.

## C

### 1

[¶ 23] After a July 31, 2000, hearing on summary judgment motions, the trial court issued an August 10, 2000, order dismissing all the negligence claims of all the parties. Bismarck contends it should be granted a new trial because no party moved for dismissal of Bismarck's negligence claim, there were disputed issues of material fact about whether the first two manhole failures were caused by Olander's negligence, and "Bismarck did not have the opportunity to explain why Olander could be held liable for negligence."

[¶ 24] "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The major concern in cases in which the court wants to enter summary judgment without a Rule 56 motion by either party is not really one of power," but "whether the party against whom the judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted." 10A Charles Alan Wright, Arthur R. Miller,

and Mary Kay Kane, *Federal Practice and Procedure: Civil 3d,* § 2720 (1998).

[¶ 25] At the July 31, 2000, hearing, the trial court and counsel addressed the parties' negligence claims a number of times, including the following:

THE COURT: ...

I know there's a lot of different causes of action that people are claiming in this matter, but as near as I can tell from everything I have read and all the pleading I have read, this is a contract case. It's a question of breach of contract.

....

MR. FABYANSKE (counsel for Olander): ...

[I]f you put aside the negligence claim, which frankly I think you probably ought to throw out because it doesn't belong in here. I agree, this is a breach of contract question.

....

MR. BAKKE (counsel for Bismarck): ... As I understand it, I can now dispense with any discussion regarding a negligence claim because what I hear Mr. Fabyanske saying is they are dropping that as of today.

THE COURT: And the truth of the matter is, I think I would rule that— from what I read, I don't see any negligence in this thing at all. I quite frankly think the negligence has to go. I don't think the—I don't think the City has suffered or Wachter or Dakota have suffered any kind of negligent damages, nor do I think they have been guilty of any negligence as I can see from reading this stuff. I just don't think this is a negligence case. I think it's a contract case, and I think we would be all better off in focusing on what we're dealing with if we deal with the question of breach of contract.

MR. BAKKE: Okay, then I will do that, Your Honor. The first issue is the work involved unforeseen under the contract.

....

THE COURT: Okay, and then we have the negligence thing out of the way.... [W]hile we're dealing with summary judgment issues, let's clean up what we can and eliminate those issues that we can so we can focus our time on what has to be done.

....

THE COURT: ... I don't mean to tip my hand too much here, but I see this case as a contract case. I think all these other things aren't going to help us decide the question of the contract.

MR. BAKKE: Okay. Then I'll focus on the contract....

MR. BOSH (counsel for Olander): And if we breach the contract, if we're negligent, they're saying, we still don't have to pay you. We can hold you to this contract, but if we breach the contract, sure, you can sue us if you want. That just means you also pay our attorney's fees. We still don't have to pay you the damages.

THE COURT: You just mentioned negligence. I don't think you have to be negligent to breach a contract. I think you have to not fulfill it.

MR. BOSH: I agree. I don't think that there is a negligence case here. I think this is a breach of contract case.

THE COURT: I understand your position absolutely perfectly, I know exactly what you're talking about, but I want to give Mr. Bakke a chance to tell me why I don't understand it.

....

MR. BAKKE: Okay. First of all, up until about two and a half, three hours ago, the City was facing a negligence

claim by Mr. Olander, and part of our indemnity claim against Olander is that under the contract provision, they are required to indemnify us for any negligence claim based on our negligence....

We've also had negligence up until today.

In the course of the three-hour hearing, the trial court made it clear that it viewed the case as strictly a contract case. Bismarck had an adequate opportunity to show why summary judgment should not be entered dismissing all of the parties' negligence claims. We conclude the lack of a motion for summary judgment dismissing Bismarck's negligence claims did not preclude the trial court from dismissing Bismarck's negligence claims.

[¶ 26] While Bismarck has contended the trial court erred in dismissing its negligence claims, it has not shown breach of an independent noncontractual duty nor has it shown any way in which it was prejudiced by the dismissal when it was allowed to fully present its contractual defenses. An appealing party has the burden "of establishing not only that the trial court erred but that such error was highly prejudicial to his cause." *Filloon v. Stenseth,* 498 N.W.2d 353, 356 (N.D.1993) (quoting *Allen v. Kleven,* 306 N.W.2d 629, 634 (N.D.1981)). "Conduct that constitutes a breach of contract does not subject the actor to an action in tort for negligence, unless the conduct also constitutes a breach of an independent duty that did not arise from the contract." *Dakota Grain Co., Inc. v. Ehrmantrout,* 502 N.W.2d 234, 236–37 (N.D.1993). Bismarck has not shown Olander breached any independent duty that did not arise from its contract with Bismarck and Wachter. In addition, even if Bismarck had established error, "[n]onprejudicial mistakes by the district court constitute harmless error and are not grounds for reversal." *Pe-*

*ters–Riemers v. Riemers,* 2001 ND 62, ¶ 10, 624 N.W.2d 83. *See also Johnson v. Northwestern Bell Tel. Co.,* 338 N.W.2d 622, 627 (N.D.1983) ("A party cannot assign as error that which is not prejudicial to him."); *Underwood v. Atlantic Elev. Co.,* 6 N.D. 274, 274, 69 N.W. 185, 185, Syll. ¶ 2 (1896) ("Error without prejudice is not ground for reversal."). We therefore conclude Bismarck has not established reversible error in the trial court's grant of summary judgment dismissing Bismarck's negligence claims.

2

[¶ 27] Bismarck contends it should be granted a new trial because the trial court erred in conducting the trial by allowing the jury to interpret the contract, drafting an incomplete and misleading special verdict form, failing to provide proper jury instructions, and admitting evidence unfairly prejudicial to Bismarck. Bismarck's brief on these matters is very conclusory, with little or no supportive reasoning or citations to authorities. We have said that without supportive reasoning or citations to relevant authorities, an argument is without merit. *Eggl v. Letvin Equip. Co.,* 2001 ND 144, ¶ 23, 632 N.W.2d 435. We have also said a party waives an issue by not providing supporting argument. *Quamme v. Bellino,* 540 N.W.2d 142, 148 (N.D.1995). In light of the conclusory nature of Bismarck's brief, we will only very briefly address these matters.

[¶ 28] We have already determined the trial court properly received extrinsic evidence of the parties' ambiguously expressed intentions, and properly submitted to the jury the factual questions of whether or not Olander performed extra work for which it was entitled to be paid and, if so, which party or parties were required to pay for it. In doing so, the trial court did

not improperly allow the jury to interpret the contract.

[¶ 29] Bismarck has presented a number of complaints about the special verdict form. "The trial court has broad discretion over the nature and scope of written questions submitted to the jury," and appellate review is limited to determining whether the trial court abused its discretion. *McLean v. Kirby Co.*, 490 N.W.2d 229, 240 (N.D.1992). We are not persuaded the trial court abused its discretion.

[¶ 30] Bismarck contends the trial court erred in failing to provide proper jury instructions. "Jury instructions must fairly and adequately inform the jury of the applicable law." *Praus ex rel. Praus v. Mack*, 2001 ND 80, ¶ 38, 626 N.W.2d 239. "On appeal, jury instructions must be viewed as a whole, and if they correctly advise the jury of the law, they are sufficient although parts of them, standing alone, may be erroneous and insufficient." *Id.*

[¶ 31] We consider it necessary to address only one aspect of Bismarck's instruction arguments. In its brief, Bismarck argues:

Bismarck requested the North Dakota Pattern Jury Instruction on mitigation of damages be given, but the trial court refused. This jury instruction makes clear a party must act to minimize its damages and a party "cannot recover damages for any injury that could have been prevented by the exercise of ordinary care." NDJI C–74.25....

In other words, Olander failed to mitigate its damages because it caused its alleged extra work through its own negligence. *By refusing to instruct the jury on the impact of Olander's failure to mitigate damages, the trial court*

*wiped out a major part of Bismarck's defense.*

The instruction Bismarck requested, NDJI C–74.25, provides:

One who has been injured in [person] [or] [property] has the duty to exercise ordinary care to avoid loss or minimize the resulting damages. One who fails to do so cannot recover damages for any injury that could have been prevented by the exercise of ordinary care.

[¶ 32] At oral argument, Bismarck said it requested instructions on the workmanship required of Olander by the contract, citing pages 140–143 of its Appendix. Bismarck's requested instructions would have told the jury Olander guaranteed its work against faulty workmanship, no verbal agreements or conversations would affect or modify any contract terms or obligations, Olander was required to provide liability insurance to protect Bismarck against claims for negligent acts of Olander, and Olander was required to use methods and appliances that would secure a satisfactory quality of work. Bismarck's only reference to this matter in its appellate briefs is the following language:

The trial court declined to give jury instructions requested by Bismarck on Olander's contractual duties. App.130–138, 140, 142–146, 150–154. Because the trial court failed to instruct the jury regarding Olander's duties under the contract, Olander was allowed to argue Bismarck allegedly failed to fulfill its duties under the contract, but Olander was not required to show it fulfilled its own duties. The trial court's erroneous failure to instruct the jury regarding Olander's duties under the contract prejudiced Bismarck's defense.

Appendix page 140, cited after the first sentence quoted above, contained Bismarck's requested instruction 8. With no more development than that, the issue

would ordinarily be deemed abandoned. *See Murchison v. State,* 1998 ND 96, ¶ 13, 578 N.W.2d 514 ("Issues not briefed by an appellant are deemed abandoned."). However, we will briefly address it.

[¶ 33] The requested instruction most closely addressing the workmanship required of Olander by the contract is Bismarck's requested instruction 8:

> You are hereby instructed that Olander made the following warranty in relation to this project:
>
> From 3–Way Agreement dated February 17, 1997(9):
>
> WARRANTY: The CONTRACTOR shall guarantee all work against faulty materials and workmanship for a period of one year from the date of final payment ...
>
> From Section 100 General Provisions of the Contract (Section 122):
>
> The Contractor shall guarantee all work against faulty materials and workmanship for a period of one year from the date of final payment and the performance bond shall remain in full force and effect for the period.
>
> GIVEN: _____
>
> REFUSED: _____
>
> AUTHORITY: 3–Way Agreement dated February 17, 1997(9); and Section 100 General Provisions of the Contract (Section 122).

The requested instruction parroted a portion of Section (9) of the contract and Section 122 of the General Provisions incorporated in the contract, all of which was admitted into evidence and was before the jury. The court instructed: "A breach of contract is a failure to perform all or any part of what is warranted or required in a contract." Question 5 of the special verdict form asked the jury: "Do you find that Olander breached its contract with Bismarck?" The court's instruction that

"[a] breach of contract is a failure to perform all or any part of what is warranted or required in a contract," coupled with the contract itself and Question 5 in the special verdict form, adequately focused the jury's attention on what Olander warranted in Section (9) and Section 122, without parroting them again by giving Bismarck's requested instruction 8.

[¶ 34] With a regard to the trial court's failure to give other instructions requested by Bismarck, we conclude the court's instructions fairly and adequately informed the jury of the applicable law.

[¶ 35] Bismarck contends the trial court erred in admitting unfairly prejudicial evidence about Bismarck's alleged willingness to pay for extra work, alleged contract modifications, the second manhole failure, and damages not specifically allowed by contract. "The trial court has broad discretion in evidentiary matters and, absent an abuse of discretion, we will not reverse its decision." *State v. Leinen,* 1999 ND 138, ¶ 7, 598 N.W.2d 102. Bismarck's conclusory assertions have not persuaded us the trial court abused its discretion.

3

[¶ 36] Bismarck contends it should be granted a new trial because the verdict was inconsistent with the evidence as no fault was attributed to Olander for the second manhole collapse, there was unrefuted expert testimony of negligent construction techniques by Olander, and the jury allowed Wachter to withhold $6,600 from Olander for delay in completing the project.

[¶ 37] "The jury need not accept undisputed testimony, even of experts." *Waletzko v. Herdegen,* 226 N.W.2d 648, 653 (N.D.1975). "We uphold special verdicts whenever possible and set

aside a special verdict only if it is perverse and clearly contrary to the evidence." *Rodenburg v. Fargo–Moorhead Young Men's Christian Ass'n*, 2001 ND 139, ¶ 7, 632 N.W.2d 407. "In reviewing a jury's findings, 'we view the evidence in the light most favorable to the verdict and determine only if substantial evidence supports it.'" *Id.* quoting *Ingalls v. Paul Revere Life Ins. Group*, 1997 ND 43, ¶ 24, 561 N.W.2d 273.

[¶ 38] The jury allowed Wachter to keep $6,600 it had withheld from Olander as liquidated damages for not completing the project until 66 days after the contracted completion date. Bismarck argues: "The jury's finding Wachter entitled to damages for delay is wholly inconsistent with its finding Bismarck 100 percent liable for Olander's alleged damages." We see no inconsistency. The jury merely found Wachter's retention of the money comported with the contract and Wachter should not suffer from the delay in completion due to the extra work Olander had to do to remedy the pre-existing problem with Bismarck's 36 inch sewer main.

[¶ 39] We conclude there is substantial evidence supporting the verdict and there is no inconsistency warranting a reversal.

## II

[¶ 40] In its cross-appeal, Olander contends the trial court misinterpreted the prompt payment act in N.D.C.C. ch. 13–01.1.

[¶ 41] Section 32–03–04, N.D.C.C., "generally governs prejudgment interest in contract cases." *Roise v. Kurtz*, 1998 ND 228, ¶ 8, 587 N.W.2d 573. That section provides that every person whose right to "recover damages certain or capable of being made certain by calculation ... is vested ... upon a particular day, also is entitled to recover interest thereon from that day." Section 13–01.1–01, N.D.C.C., requires prompt payment by governments for property or services:

> Every state agency, political subdivision, or school district, which acquires property or services pursuant to a contract with a business shall pay for each complete delivered item of property or service on the date required by contract between such business and agency or, if no date for payment is specified by contract, within forty-five days after receipt of the invoice covering the delivered items or services. The acquisition of property includes the rental of real or personal property.

Section 13–01.1–02, N.D.C.C., provides for interest on overdue payments:

> Interest must accrue and be made on payments overdue under section 13–01.1–01 at the rate of one and three-fourths percent per month, unless a different rate is specified within the contract upon which the claim is based. Interest must accrue beginning on the day after payment is due, if payment due date is specified by contract, or on the day of receipt of the invoice covering the delivered goods or services, if payment is not made within forty-five days. Interest ceases to accrue on the date payment is made.

Section 13–01.1–03, N.D.C.C., provides for compounding interest:

> Any interest which remains unpaid at the end of any forty-five-day period or which remains unpaid at the end of any specified period provided by contract must be added to the principal amount of the debt and must thereafter accumulate interest.

Section 13–01.1–05, N.D.C.C., provides the chapter is inapplicable when timely payment results from a dispute:

> If the agency or business fails to timely pay interest as required by sections 13–

01.1–02 and 13–01.1–06 and the failure is the result of a dispute between the agency and the business, or a dispute between the business and a subcontractor or supplier, over the amount due or over compliance with the contract, the provisions of this chapter are inapplicable. If the settlement of a dispute is found in favor of the business, or the subcontractor or supplier, interest must accrue and be paid as provided in section 13–01.1–03.

"The Committee reports concerning Chapter 13–01.1 indicate the legislation is intended to stimulate governmental entities to make prompt payment to the small retail businesses which provide them goods and services." *Johnson v. North Dakota Workers Comp. Bur.*, 428 N.W.2d 514, 519 (N.D.1988).

[¶ 42] The trial court ruled N.D.C.C. ch.13–01.1 was inapplicable because the dispute was ended by litigation to judgment, rather than by "settlement," and limited Olander to 6% interest from November 11, 1997, on the jury verdict of $220,849.67, and 12% after entry of judgment. Olander contends the trial court misinterpreted N.D.C.C. ch. 13–01.1 and it is entitled to interest in accordance with that chapter.

[¶ 43] We recently addressed statutory interpretation:

The interpretation of a statute is a question of law, fully reviewable on appeal. Our primary objective in construing a statute is to ascertain the intent of the Legislature by looking at the language of the statute itself and giving it its plain, ordinary, and commonly understood meaning. Although courts may resort to extrinsic aids to interpret a statute if it is ambiguous, we look first to the statutory language, and if the language is clear and unambiguous, the legislative intent is presumed clear from the face of the statute. In interpreting a statute, we presume the Legislature did not intend an absurd or ludicrous result or unjust consequences. Rather, statutes are to be construed in a practical manner. We give consideration to the context of the statutes and the purposes for which they were enacted.

*McDowell v. Gillie*, 2001 ND 91, ¶ 11, 626 N.W.2d 666 (citations omitted).

[¶ 44] "Where the demand is for a disputed, uncertain and unliquidated amount, interest may not be allowed prior to judicial determination of the amount due from the municipality." 17 Eugene McQuillin, *The Law of Municipal Corporations* § 48.09 (1993 rev. vol.). Interest is not allowable on an unliquidated claim until it is reduced to judgment. *Nelson v. City of Seattle*, 180 Wash. 1, 38 P.2d 1034, 1044 (1934).

It has also been held that if a demand is made by plaintiff for more than is due, plaintiff is not entitled to interest until the amount due is judicially ascertained.... Where there are unliquidated cross-demands, as here, and evidence is essential to establish the quantity and classification of the work, interest is not allowable prior to the time of judgment.

*Lockard v. City of Salem*, 130 W.Va. 287, 43 S.E.2d 239, 243 (1947). *Vali Convalescent & Care Insts. v. Division of Health Care Fin.*, 797 P.2d 438 (Utah Ct.App. 1990), dealt with a dispute over claims of a provider of services to Medicaid recipients for reimbursement. The provider sought interest under the Utah Prompt Payment Act, of which Section 15–6–4 Utah Code Ann. (1986) provided: "If the agency's failure to timely pay interest as required by § 15–6–3 is the result of a dispute between the agency and the business over the amount due or over compliance with the contract, the provisions of this act are inapplicable." The Utah Court of Appeals

held: "Because there was clearly a dispute, the Utah Prompt Payment Act does not provide a statutory basis for the recovery of interest." *Vali Convalescent & Care Insts.*, 797 P.2d at 444–45.

[¶ 45] In a fashion similar to the statute involved in *Vali Convalescent & Care Insts.*, N.D.C.C. § 13–01.1–05 provides: "If the agency ... fails to timely pay interest as ... the result of a dispute between the agency and the business ... over the amount due or over compliance with the contract, the provisions of this chapter are inapplicable." If N.D.C.C. § 13–01.1–05 stopped there, the result would be as in *Vali*-interest would not be available under N.D.C.C. ch. 13–01.1. However, N.D.C.C. § 13–01.1–05 goes on to provide: "If the settlement of a dispute is found in favor of the business ... interest must accrue and be paid as provided in section 13–01.1–03."

[¶ 46] The trial court concluded N.D.C.C. ch. 13–01.1 was inapplicable in this case because the dispute was ended by judgment, rather than by "settlement." "[T]here is a public policy in this state to encourage settlements and to discourage litigation." *Nelson v. Johnson*, 1999 ND 171, ¶ 17, 599 N.W.2d 246. Litigation is considered injurious to society, and compromises which diminish litigation and promote a peaceful society are favored. *North Dakota Workers Comp. Bur. v. General Investment Corp.*, 2000 ND 196, ¶ 13, 619 N.W.2d 863. We therefore disagree with the trial court's analysis, which runs counter to this state's public policy of encouraging settlements and discouraging litigation, and undercuts the legislative intention "to stimulate governmental entities to make prompt payment to the small businesses which provide them goods and services,"

*Johnson v. North Dakota Workers Comp. Bur.*, 428 N.W.2d 514, 519 (N.D.1988). An agency could avoid the interest required by N.D.C.C. ch. 13–01.1 for untimely payment by forcing businesses to litigate a dispute to judgment. We decline to adopt a construction of N.D.C.C. § 13–01.1 that would lead to more, rather than less, litigation.

[¶ 47] Instead, we adopt a construction that we believe will advance the legislative intent behind the statute, while promoting settlement of disputes. We construe N.D.C.C. § 13–01.1–05 to mean that N.D.C.C. ch. 13–01.1 is inapplicable while there is a reasonable dispute between the agency and the business over the amount due or over compliance with the contract. However, once a "settlement of a dispute is found in favor of the business," which implies a decision-making process about the amount due or compliance with the contract, then interest accrues and is payable in accordance with N.D.C.C. ch. 13–01.1 from that point.[2]

### III

[¶ 48] Our conclusions render a new trial unnecessary. We therefore need not address the other issues raised in the cross-appeals lodged by Olander and Wachter. We need not address questions, the answers to which are unnecessary to the determination of an appeal. *Johnson v. Johnson*, 2001 ND 109, ¶ 13, 627 N.W.2d 779; *Hospital Servs., Inc. v. Brooks*, 229 N.W.2d 69, 71 (N.D.1975).

### IV

[¶ 49] Other arguments presented are without merit. The judgment and orders are affirmed.

2. The parties have not focused on the question of when the dispute was resolved for the accrual of interest in accordance with N.D.C.C. ch. 13–01.1, and we need not address that question, because it is unnecessary to the determination of the appeal.

[¶ 50] WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 51] Although I concur in the result reached by the majority, I write to express my concerns with portions of the opinion.

[¶ 52] I am not convinced the trial court was correct in dismissing the negligence claims. It appears the dismissal may have been based on a belief or a philosophy that once a contract has been entered into any negligent acts by the parties are nothing more than a breach of contract. As the majority opinion notes, conduct that constitutes a breach of contract may subject the actor to an action in tort if the conduct constitutes a breach of an independent duty that did not arise from contract. *Dakota Grain v. Ehrmantrout,* 502 N.W.2d 234 (N.D.1993).

[¶ 53] The majority opinion observes that "Bismarck has not shown Olander breached any independent duty that did not arise from its contract with Bismarck and Wachter." But the majority does not explain or discuss whether that lack of showing may have been due to the trial court's pre-trial dismissal of the negligence claims. While I applaud the trial court for attempting to simplify the issues, care should be taken not to substitute the trial court's theory of the cause of action for that of the plaintiff.

[¶ 54] I concur in the result on this issue because, as the majority notes, once having ordered the negligence claims dismissed, Bismarck did not rally its evidence or request a continuance if it was caught off guard by the trial court's sua sponte dismissal of the negligence claims.

[¶ 55] My concern is heightened by the lack of specific instructions on workmanship required of Olander. Once the negligence allegations of the counterclaim were stricken under the belief that Olander's alleged acts would constitute simply a breach of contract, I believe explicit instructions on the workmanship required of the contractor should have been given. The majority notes that Bismarck did not press the issue in its appellate brief and that the effect of the instruction given by the court "adequately focused the jury's attention on what Olander warranted...." Because Bismarck was not free to argue negligence on Olander's part once those allegations were stricken, explicit instructions on the workmanship required of Olander should have been given. But, Bismarck has not persuaded me those specific instructions were requested. Again, we do not know whether or not this was due to surprise at the trial court's striking of the negligence allegations. In any event, a party has a duty to protect and perfect the record for appeal. I therefore concur in the result.

[¶ 56] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, JJ., concur.